STATE OF IOWA v. JAMES CRISTY, Appellant.

**Criminal law:** BURGLAGY: EVIDENCE. On this prosecution for burglary
1 the evidence is reviewed and held sufficient to support a verdict of conviction.

**Same:** EVIDENCE: ERRONEOUS ADMISSION: PREJUDICE. Evidence which
2 was rendered inadmissible because of failure to connect defendant with the fact thus proven was not prejudicial to him, where the same was later stricken from the record.

**Same:** TRIAL: SEPARATION OF WITNESSES. The separtion of witnesses
3 upon the trial is largely a matter of discretion and unless abused the appellate court will not interfere with the order.

*Appeal from Story District Court.*—HON. R. M. WRIGHT, Judge.

FRIDAY, JANUARY 12, 1912.

THE defendant was convicted of having committed the crime of burglary, and appeals.—*Affirmed.*

*J. F. Marlin* and *C. H. Hall,* for appellant.

*George Cosson,* Attorney-General, *John Fletcher,* Assistant Attorney-General, and *H. E. Hadley,* County Attorney for the State.

LADD, J.—Appellant, without moving to strike, requests the court to disregard the state's amendment to the abstract, and we shall comply with this request save as the abstract, which in many respects is misleading and untrue, is shown by the transcript to be correct. The amendment may be somewhat defective in form, but, as counsel for appellant in the preparation of their argument have proceeded as though unaware of the existence of this court's rules prescribing the method to be followed, it would seem that honors are about even, and that the appeal should be considered on the record as presented. Had the particular errors of which complaint is made and the precise points relied on for reversal been specifically stated, as directed in the rules, this court would not only have had the benefit of counsel's analysis of the record and of argument concentrated on each of the alleged errors, but would have avoided the necessity of making a search to ascertain rulings of which appellant complains. The rules for the preparation of briefs were adopted after extensive inquiry concerning the practice of other courts of last resort and in the light of long experience, and have been found not only to promote their thorough preparation, but perspicuously to challenge attention to the very rulings to which exception is taken and greatly to facilitate the labors of the court.

I. The offense charged is that while one Wright, a station agent of the Ft. Dodge, Des Moines & Southern

Railway at Huxley, was gone to supper, defendant en-

1. CRIMINAL LAW: burglary: evidence.

tered the office and took from a desk therein money in dimes and nickles amounting to about $15 with intent to commit larceny.

The sufficiency of the evidence to sustain a verdict is challenged. It appears that Wright left his office at about 5:45 o'clock p. m. on May 11, 1910. The doors were then locked and the windows fastened, but, upon his return, about fifty minutes later, he discovered that the door from the office into the waiting room, though closed, was un-locked and, upon entering the office, noticed marks indi-cating that the money drawer or till had been tampered with. The lock had been pried open and bent in some way so that the key would not unlock it. Upon lifting the till out, he discovered that $15.20 had been removed therefrom. This consisted of fifty dimes rolled up in paper and $6 in nickels put up twenty in a roll and some loose change of like denominations. Shortly after the agent had left the station, the defendant was seen by three persons in that vicinity to pick up a copy of the Des Moines Daily Capital, which had been lying on the ground nearby for some time, and one witness testified to having seen him go toward the door to the waiting room, but, as this was on the side of the depot opposite the witness, he could not tell whether he entered, but, after a short time, he saw him come around the building and go to a nearby outhouse. The newspaper was identified by sev-eral witnesses by an illustration or picture appearing there-on. Upon the return of the agent it was found on a bench near the ticket window inside the ticket office. De-fendant was shown to have inquired of several persons as to when the next Interurban train (over the road men-tioned) would go south, and was informed that the sche-duled time was 5:40 o'clock p. m., but that the train had not gone, and one of the witnesses undertook to find out when it would go, but defendant left while he was inquir-

ing. Instead of waiting for the train, defendant started
down the Interurban track southwest and, after proceeding
about a mile and a half, employed a farmer to hitch up
his team and take him to the town of Slater about six
miles distant, and upon his arrival at Slater paid him $1
for his services in dimes and nickels. The marshal of
this place, upon request by telephone of officers at Huxley,
arrested defendant near the Chicago, Milwaukee & St.
Paul Railroad and took him to the mayor's office in a store
there to await the arrival of such officers. He sat down
for about an half hour, when a piano agent called attention
to the fact that he had not been searched. After some par-
ley, according to the mayor's story, he "stepped up to him
and took him by the hand and said, 'We · have got to
search you.' Thereupon the defendant "tried to get
around to his pocket," whereupon a bystander took hold
of the other hand, and the defendant "kind of tried
to fight" and "kind of got his hand around some
way and got his gun· out." Thereupon the piano
agent came in front of him with a gun and told him to
"give up that gun" which he then had "right in front of
him" and the agent "jerked the gun out of his hand" and
gave it to the mayor, and "kind of a tussle and kind of a
fight" followed; but the defendant was finally laid on the
floor, but, upon the suggestion of the mayor, was carried
to the front of the store and set in a chair. Previous to
this, two razors had been taken from his pockets, and when
he was in the chair his shoes were taken off and a lot of
dimes and nickels found in his . stockings. The city mar-
shal testified that the defendant when arrested made no
objection to coming with him and gave an account sub-
stantially like that of the mayor, except that, according
to his version, when searched the defendant said, if any
one searched him, to let the marshal do so. On the follow-
ing day, the sheriff took him to the county jail, where, on
being searched, $2.50 in silver and $14.20 in nickels and

dimes were found in his different pockets and stockings, and some junk jewelry and a large number of pearls. Nearly every pocket contained some small change. He had no other money on his person. While in the jail he occupied a cell with a cement floor, and, as the wife of the sheriff heard tappings in the cell, the sheriff investigated and found the defendant lying on the floor with a pillow over a diagonal hole through the floor, about twelve inches each way and six or eight inches deep; but this was about six feet from the outside wall. The sheriff had found morphine and cocaine on his person, and it appears he had taken some of this in the morning.

By way of defense, it was shown that defendant was traveling about the country purchasing cast-off jewelry, which he either had made over, or, if gold, melted and then sold, and, at about 4 o'clock in the afternoon prior to his arrest had purchased two pearls of one Rubar at Cambridge, about four miles east of Huxley, and had paid $4 therefor. This he took from a chamois skin purse. In the course of their conversation, he emptied this purse in his hand in order to find old coins he was exhibiting to Rubar. According to the latter, this consisted simply of a "few dollars and quarters, and so on," all of small denomination. He carried this chamois skin purse, which was about two-thirds full, mostly of small coin, next to his body fastened to his trousers by a safety pin. It also appeared that one Beebe in part payment for a horse had paid him at Des Moines $10 or $15 in dimes and small coins about the last of April. He had boarded with Mrs. Wagner in Des Moines, and she testified that she had made the purse for him, and that when he left her place about three days before his arrest he had this filled with some bills, silver, and $10 or $12 in nickels and dimes. This testimony is corroborated by that of her husband, but neither seem to have been certain as to the amount in small change. Such is the evidence on which the jury

based its verdict, and we are of opinion that it was suffi-
cient to sustain the finding. The circumstance that the
newspaper picked up by the defendant was found in the
office upon the return of the agent, that, after careful in-
quiry when the train would leave, he walked a mile and a
half and then employed a farmer to take him to the town
of Slater, which was not on the Interurban road, that
the money in nickels and dimes found on his person and
that paid to the farmer exactly equaled the amount in
nickels and dimes taken from the till at Huxley, that when
searched no money was found in the purse to which Rubar
referred, that he resisted the search of his person and
undertook to draw a revolver when this was being done,
and further that he was discovered digging through the
county jail, all this so directly points to the accused as the
perpetrator of the offense that this court should not inter-
fere with the verdict returned by the jury.

II. The sheriff was allowed over objection to state
that one of the locks in the jail had been
interfered with so that it had to be taken
off; but, upon failure to connect defendant
therewith, the evidence was stricken out.
This obviated any prejudice to the defendant.

2. SAME:
   evidence:
   erroneous
   admission:
   prejudice.

The state, after resting, requested that the witnesses
for defendant be separated, and it is said that the order
was erroneous, in that it should have been made at the
commencement of the trial. The matter was
entirely within the discretion of the trial
court, and there is no indication that this
was abused, or that any prejudice resulted from his order.
There is nothing in the contention that the instructions
indicated the court's opinion of the issue being tried.

3. SAME:
   trial:
   separation of
   witnesses.

Complaint is made that appellant was not allowed to
show for what purpose he carried the razors found on his
person. Though the record discloses that counsel sug-
gested to the court that it seemed to him fair that such

purpose should be shown, no question was propounded calling for such testimony.   Nor was there any ruling on the suggestion upon which to predicate error.   No exception to the fifteenth instruction was saved, and for this reason the criticism thereof can not be considered.—*Affirmed.*