STATE OF IOWA, Appellee, v. WILLIAM RAND, Appellant.

**INDICTMENT AND INFORMATION:** Minutes of Magistrate—Irregular Taking—Motion to Quash. When an indictment is returned on minutes of testimony certified by the committing magistrate, such indictment is not rendered invalid, and the witnesses whose testimony is so certified are not rendered incompetent to testify on the trial by the fact that the shorthand

reporter appointed by the magistrate (Sec. 5227, Code, 1897), in making his transcript of the testimony, in part used the transcript of a private party, which transcript the reporter compared and found correct, and which was correct as a matter of fact. Such act was irregular but not reversible error.

LARCENY: Evidence to Sustain Verdict—Sufficiency—Larceny from
2 Person. Evidence reviewed and held sufficient to sustain a verdict of guilt of larceny from the person.

CRIMINAL LAW: Misconduct of Juryman During Deliberations—
3 Detailing Matters Outside of Evidence. A verdict will not be overthrown by the fact that, during the deliberations of the jury in the trial of a criminal cause, one of the jurors stated that the defendant "looked like" a party who some years prior thereto obtained a small sum of money from him by a sharp scheme.

*Appeal from Union District Court.*—HON. H. K. EVANS, Judge.

THURSDAY, APRIL 8, 1915.

DEFENDANT was indicted for the crime of larceny from the person. He was accused of stealing from the person of one Kirkendall a pocket book containing something over six dollars in money. There was a trial to a jury, and defendant found guilty. From the judgment pronounced upon the verdict, the defendant appeals.—*Affirmed.*

*La Monte Cowles* and *S. R. Allen,* for appellant.

*George Cosson,* Attorney General, *W. S. Rankin,* Special Counsel, and *H. P. Armitage,* County Attorney, for the State.

PRESTON, J.—1. The points relied upon as error and upon which a reversal is asked are, that the evidence was not properly taken before the committing magistrate; that the evidence is insufficient to sustain the conviction; and that there was misconduct of one of the jurors. At the preliminary hearing before the committing magistrate, one Beverling was appointed as shorthand reporter to take the evidence. One Shiffer, who was in the employ of the

1. INDICTMENT AND INFORMATION: minutes of magistrate: irregular taking: motion to quash.

Railway Company, was also present and took a shorthand report of the examination of the witnesses. Shiffer was not sworn as reporter. Shiffer made a transcript of the evidence. He testified as a witness in the district court that his report of the evidence was correct. Beverling's shorthand notes came apart, and, because it was easier to do so, he used Shiffer's transcript in making his own. But he testifies that after he had made his own transcript he compared it with his own shorthand notes and found it correct. It is admitted that the transcript made by Beverling was certified to the grand jury by the magistrate, and such notes were used by the grand jury as a basis upon which to find an indictment. The witnesses did not appear before the grand jury. Defendant moved to quash the indictment because the evidence was taken in the method just indicated, and the motion was overruled.

This does not seem to be a ground for setting aside the indictment under Sec. 5319 of the Code. When the witnesses were sworn on the trial, the defendant objected to the introduction of their testimony for the reason that there was no showing that their testimony was ever taken before the committing magistrate, or before the grand jury, and that the witnesses failed to appear before the grand jury, and no notice was served of their being made witnesses in the case. There is no showing or claim that the evidence which was finally adopted by Beverling and the committing magistrate and certified by them was not correctly taken down and transcribed. The objection is that Shiffer was not sworn and that Beverling used Shiffer's transcript, in part at least, in making the transcript which was filed and certified.

Sec. 5254 of the Code provides that an indictment can be found only upon evidence given by witnesses produced, sworn and examined before the grand jury, or furnished by legal documentary evidence, or upon the minutes of evidence given by witnesses before a committing magistrate.

Sec. 5227 provides that the magistrate shall, in the minutes of the examination, write out or cause to be written out the substance of the testimony given on the examination

by each witness, etc., and that, by agreement of parties or their attorneys, the magistrate may order the examination taken down in shorthand and certified substantially in the manner provided for taking depositions by a stenographer, etc.

Section 5228 provides that after the examination is closed, the magistrate must attach together the complaint, the warrant or order of commitment, if any, under which the defendant was brought before him, the minutes of the examination, including all depositions used, and annex thereto his certificate, which must set forth, in substance, the time and place of examination, and that the minutes thereof are true, which certificate must be officially signed by the magistrate.

Sec. 5373 provides, in substance, that witnesses not examined before the grand jury, or the minutes of whose testimony have not been made by the committing magistrate, or someone appointed by him, cannot be called by the state without notice to the defense.

Though it was somewhat irregular for Beverling to use Shiffer's transcript, the evidence shows that he compared his own transcript with his own shorthand notes; that the transcript was correct; it was certified by the magistrate. We think that this is a substantial compliance with the statute. The statute does not require that all the evidence shall be taken, but only the substance, and that it shall be certified by the committing magistrate as true. As stated, the evidence as transcribed by Beverling was so certified by the magistrate. We are unable to see that the defendant was prejudiced in any manner by the method pursued.

2. The defendant did not testify as a witness, and there was no evidence introduced on his behalf. The larceny is alleged to have been committed on a passenger train at the town of Creston, Iowa, March 3, 1914. Witness Ault, a traveling salesman, was a passenger on the train at the time of the alleged larceny. The train was standing at the time of the transaction. He says:

2. LARCENY: evidence to sustain verdict: sufficiency: larceny from person.

"As I saw it, when the crowd was getting in, this gentleman here who says his name is Rand was standing at the side of the entrance into the smoking compartment, he turned around and looked at me, then looked on into the bunch of people coming through; then the people commenced to come through and he ducked in and ducked back again and ducked in and out again. I wondered why he didn't go on in and sit down. I was sitting in the smoking compartment when he was pushing in the line of people coming in the train. When he pushed in he didn't go on through. I wondered what caused him to do that. Then he pushed in again and stepped out again, had his overcoat on one arm. The people were coming in the train. It had been in some five minutes. I was one of the first ones to get in the train. I saw defendant run his hand in the direction of Kirkendall's clothes. I suppose I was about four feet, possibly five, from them. (Witness illustrates how it was done.) He run his arm in like that, under his overcoat, and pulled it back again. The crowd kept pushing on and simply packed the entrance. Then he run his arm in his overcoat. That time when he brought it out and back was when I noticed this pocket book. I saw defendant's hand after he put it out towards Mr. Kirkendall when he pulled it back. When defendant brought his hand back there was something in it. I saw one end of this black purse. It was similar to Exhibit 'B' you show me. I saw a part of the purse. It was under his hand in a concealed way. I never saw either Kirkendall or Rand before. The second time he run his hand in, the pocket book was in his hand."

Q. "You know that was a pocket book?"

A. "From what I saw of it, it was."

Q. "Will you swear to the jury it was a pocket book?"

A. "No, sir."

"This transaction was between 11.30 and 12:00 o'clock noon. I came back to Creston that evening; was present when the pocket book was found by Mr. Allen. It was found in

the toilet room of the depot on top of some kind of a shelf or cover of some kind. Others were present. I had a conversation that day with Kirkendall in the car we were sitting in. Rand was not present.''

Kirkendall testifies:

''My age is seventy-five. I used to be on a farm. Exhibit 'B' you show me is undoubtedly my pocket book. Had it last in my possession right here in Creston between eleven and twelve o'clock the third or fourth of March, I wouldn't be positive. I had six dollars and some change in it when I last had it in my possession. I was traveling that day from Albia to Omaha. When the train stopped at Creston I got up and went to the door, then I turned around and went back to get my seat. As I passed back there was a kind of jostle. I didn't think anything about it because my wife has been sick and I was in deep trouble. I didn't pay much attention to anybody. Mr. Ault spoke to me and I threw my hand to my pocket and the purse and all the money I had in it was gone.''

Mr. Allen, Division Superintendent for the Railroad, with headquarters at Creston, saw defendant on March 3rd going from the head end of the car to the depot. He was the last one off the car when the train started. Observed defendant going directly toward the depot. Got back on the train, and returned to Creston at about seven o'clock that evening. Saw the pocket book, Exhibit ''B,'' the evening of March 3rd, picked it up from the top of a closet in the gentlemen's toilet room in the depot. Others were with him. The shelf, or cupboard, was covered with dust, but there was no dust on the pocket book, that is, the dust which covered the closet was not over the pocket book.

Another witness had a conversation with defendant after the alleged larceny, in which he says he told defendant that the old gentleman lost ten or twelve dollars; that he didn't

know the exact amount, and defendant said he didn't; he lost six and a half. He says:

"I asked him how he knew. He said, well he lost six and a half."

Q. "The papers that evening had an account of the crime, the evening of the third?"

A. "I didn't see. I didn't see the papers of the date of the third. He told me the old man lost six fifty."

Another witness testified that defendant went under two different names, Charles Moss and William Rand; that he was registered at the hotel the last of February under the name of Charles Moss; that he saw defendant on the third of March about twelve o'clock, or a little after, soon after the train had left; saw him come out of the north door at the east end of the men's part of the depot. The waiting room is in the west end of the depot. There is a little hallway runs back through to the gent's closet, and then out around the gent's closet out around the north door. He says:

"That is the door I saw him come out of. Defendant told me he was the man registered as Charles Moss."

It is urged by the defense that, because the money taken from Kirkendall was not identified or found in the possession of the defendant, the evidence is not sufficient. But we are satisfied from a reading of the entire record that the evidence abundantly sustains the verdict.

3. It is said there was misconduct of the jurors. It is shown in support of the motion for new trial that they were giving their experiences in the jury room, and one of them stated to some of the others an occurrence that took place some years before on a train; that a man approached him on a train and engaged him in conversation, and that as they approached a certain town the man suggested that they each put in a dollar, and that he would go out and

3. CRIMINAL LAW: misconduct of jury-man during deliberations: detailing matters outside of evidence.

get some lunch, and the man never came back. He said that man looked like the defendant. Did not say it was the defendant. The jurors, testifying, say that the statement had no influence upon them in arriving at a verdict. It is said by counsel for the defendant that, had witnesses been asked such a question upon the trial, such a statement would have been excluded. We suppose many things are discussed by jurors in their jury room which would not be admissible in evidence on the trial of the case. This was not stating evidence in support of any element necessary to be proved in the charge against defendant, as claimed by the defense. We suppose it is safe to say that in the experience of most judges and lawyers it is known that sometimes the attorney for the unsuccessful party will visit the jurors, or some of them, and try to convince them that their verdict was wrong, and sometimes get an affidavit from them couched in the language of the attorney, and often the juror files a counter affidavit to explain his statements, and occasionally, perhaps, a juror is convinced after the verdict that he may have made a mistake.

In *State v. Dudley*, 147 Iowa, at 653, the court said:

"Affidavits of jurors that they have been unduly influenced by their fellows, or of the reasons for assenting to the verdict, or of improper arguments resorted to in the jury room, or that they did not assent to the verdict, or that it was not the result of their deliberate judgment, or they did not understand the instructions of the court as these matters inhere in the verdict, are incompetent, and cannot be received to impeach the jury's findings. . . . Jurors after having agreed to a verdict cannot, in order to have it set aside, explain by affidavit the ground or train of reasoning by which they arrived at the result. Should affidavits of this character be entertained, few verdicts would stand, as some jurors would be found in most cases who would allege as mistakes of law

or fact what were really afterthoughts suggested by the de-
feated party or his counsel."

It should be said here that counsel appearing for the
defendant in this court were not the same as counsel who tried
the case, and we do not intimate that counsel did see the
jurors in this case, but we have simply stated the rule.  Some
of the jurors were placed upon the witness stand and examined
in regard to this matter instead of making affidavits.

As suggested by counsel, the amount of money taken was
not large, but this is not the test in a case of this kind.  Rob-
bery and larceny from the person are considered serious of-
fenses.  The length of time which defendant will be required
to serve will be determined by the board of parole.  The board
will doubtless give the matter proper consideration at the
proper time.

We discover no prejudicial error in the record, and the
judgment is, therefore,—*Affirmed.*

DEEMER, C. J., EVANS and LADD, JJ., concur.