STATE OF IOWA, Appellee, v. DAISY BRENNAN, Appellant.

WITNESSES: Antecedent Character of Witness. The permissible
1 range of cross-examination may embrace a showing of the depraved habits, antecedents, and character of the witness.

WITNESSES: Contradictory Statements. A witness may be impeached, on cross-examination, by a showing that he has, on another occasion, made statements which are not only contradictory of his present statements, but wholly at variance with the *obvious purpose* of his present statements, even though such contradictory statements very seriously reflect on the moral character and credibility of the party to the action who has called the witness.

WEAVER, J., dissents as to application made.

CRIMINAL LAW: Curing Error. The full withdrawal of noninflammatory testimony, followed by ample admonition to the jury to wholly disregard the same, cures any error in its original reception.

CRIMINAL LAW: Oral Instructions. Evidence may be with-
drawn from the jury by an *oral* instruction,—even when given
during the deliberations of the jury.

TRIAL: Impeachment of Verdict. Jurors may not impeach their
verdict by affidavits to the effect that they did not understand
the court's rulings with reference to the rejection of certain
testimony.

*Appeal from Woodbury District Court.*—J. W. ANDERSON,
Judge.

DECEMBER 14, 1918.

DEFENDANT appeals from a conviction of manslaughter,
and judgment sentencing her to the State Reformatory.—
*Affirmed.*

*T. F. Bevington,* for appellant.

*H. M. Havner,* Attorney General, and *F. C. Davidson,*
Assistant Attorney General, for appellee.

STEVENS, J.—The indictment charges the defendant with
the crime of murder. The claim of the State is that, on the
evening of the 27th day of April, 1917, she killed one Mc-
Nulty, in an alley in Sioux City, by stabbing him with a
knife. The evidence offered upon the trial tended to show
that, on the evening of the alleged killing of McNulty, and
shortly prior thereto, the defendant went to the home of
his mother, to see deceased, where a controversy arose be-
tween them over a letter. which defendant claimed he had
received from another woman. Defendant left the home of
deceased's mother in a fit of anger, and was shortly there-
after followed by deceased. Later in the evening, McNulty
was found dead in an alley, and between eight and nine
o'clock, defendant returned to the home of his mother, very
much excited, and told her that McNulty was hurt. She
was shortly thereafter arrested, and taken into custody by
the police, and later, it is claimed, admitted that she stabbed

deceased with a butcher knife. This was denied by her upon the witness stand, and evidence was offered on her behalf tending to show that the killing was accidental, and that whatever, if anything, she did, was in the lawful defense of her person. While the evidence is conflicting, the verdict is fully sustained by the evidence.

I. Complaint is made of certain questions propounded to the defendant upon cross-examination. The county attorney thereby sought to elicit from her that she had been arrested in Dakota, in connection with her husband, and that she had been incarcerated in jail for a time, at Sioux City. This evidence bears directly upon her credibility as a witness, and was clearly proper. *State v. Pugsley,* 75 Iowa 742, 743; *State v. Chingren,* 105 Iowa 169; *State v. Peirce,* 178 Iowa 417; *State v. Brooks,* 181 Iowa 874.

1. WITNESSES: antecedent character of witness.

II. The evidence also tended somewhat strongly to show that defendant was infatuated with deceased, and that she had complained to him, during the afternoon of the day on which he was killed, of a letter which another woman had written him, and which she claimed to have taken from his brother's mail box. The conversation regarding the letter occurred at the home of the mother of deceased, and in the presence of several witnesses, who testified that, during the course of the conversation, she became very angry, and left the house in an angry mood.

2. WITNESSES: contradictory statements.

Her husband was called as a witness, and examined in her behalf. He testified in chief that he resided with his wife at 1601 East Fifth Street in Sioux City; that he and defendant were married on March 4, 1909, and had continuously resided together as husband and wife since their marriage. He also testified that he was an invalid, and that, on the evening in question, defendant had, at his request, gone to the store to get him some oranges; that she

later returned, without bringing the oranges; that, when she reached the house, she was very much excited, and told him that deceased had assaulted her in the alley, and had said to her, "If I can't have you, nobody can have you,"— and kicked her in the abdomen. He also testified that deceased had the reputation of being a quarrelsome person, and to other matters material to the defense.

The county attorney, upon cross-examination, elicited from the witness the statement that his wife had always been devoted to him, and that they had lived happily to-gether: whereupon he was asked if he remembered filing a petition for divorce, in November, 1914, in which it was alleged that his wife had been cruel to him; that they were living separate and apart; that she had committed acts of prostitution, and was an habitual drunkard. Portions of the divorce petition were read to the witness, and he. was asked whether he remembered them, and as to the truth thereof. The witness denied the truth of much of the matters alleged in the petition, or that he had consciously made these statements. Timely objection was made to all of the questions propounded to the witness; and it is now urged by counsel for appellant that the court erroneously permitted the county attorney to pursue this line of cross-examination, and that all of the testimony as to the divorce proceedings, and particularly the allegations of the petition, was extremely prejudicial. It must be confessed that this evidence strongly reflected upon the moral character of the defendant, and her credibility as a witness. The obvious purpose of counsel in examining this witness concerning his marital relations was, so far as possible, to overcome the unfavorable effect of the testimony of several of the State's witnesses, tending to show an improper attachment between the defendant and deceased; that, instead of defendant's being infatuated with him, she was a faithful and devoted wife; and that she and the witness had continuously resided

together; and that it was extremely improbable that the relations between her and deceased suggested by the evidence of the State, would exist. The witness sought by his testimony to create a wrong impression. If the allegations of the divorce petition were true, his testimony could not well be believed, and he was seeking to aid the defendant by giving false testimony upon the trial. The State had a right to show, if it could, that he had made contradictory statements, and for this purpose, his attention was called to the allegations of the petition filed in the divorce proceedings. The witness sought to evade direct answer to the questions of the county attorney, by saying he did not remember; whereupon, the county attorney handed him the original petition for his examination, and to refresh his recollection. It is true that this testimony tended to reflect upon the defendant, who was necessarily more or less prejudiced thereby; but that it was proper cross-examination is beyond question. *State v. Peirce,* 178 Iowa 417. Counsel was not seeking to cross-examine the witness upon matters elicited by him, as counsel for defendant argued, but upon matters sought to be established in chief.

III. One Richards was examined by the State regarding a conversation which he claimed to have had with the defendant, in which he recited to her what a negro by the name of Scott had told him concerning the killing of McNulty. Counsel for defendant objected to all that part of the conversation relating to what Scott said, and later, the court orally withdrew this evidence from the jury, cautioned it not to consider the same in any of its deliberations, or to give weight thereto, and at the same time admonished counsel not to refer to it in argument or otherwise, in the presence of the jury during the trial. After the jury had been out for a couple of hours, the court, in response to a question from the foreman as to what consideration should be given to

3. CRIMINAL LAW: curing error.

Scott's story, recalled it, and, in the presence of defendant's counsel, again orally instructed that they give no weight or consideration whatever to this evidence.

The contention of counsel for defendant is that the evidence in question was of a character inherently and necessarily prejudicial to the defendant, and that the attempted withdrawal thereof from the consideration of the jury was ineffectual to cure the error in its admission. While the evidence was important, and related to a vital issue in the case, it was not of a character to arouse the prejudice of the jury; and we see no reason why its withdrawal, under the careful admonition and caution of the court, should not have been effectual to cure the error, if any, in its admission. *State. v. Walker*, 133 Iowa 489.

IV. Defendant also complains because the instruction of the court to the jury, when recalled, to give no weight or consideration to the evidence objected to, was not in writing.

**4. CRIMINAL LAW: oral instructions.** Section 3705, Code Supplement, 1913, does not require instructions withdrawing evidence from the consideration of the jury to be in writing, and the court properly orally withdrew same. *State v. Helm*, 97 Iowa 378; *State v. Hogan*, 115 Iowa 455; *State v. Scroggs*, 123 Iowa 649; *State v. Cristy*, 154 Iowa 514.

V. Affidavits of jurors were attached to defendant's motion for a new trial, stating that they did not fully understand the court's ruling, but understood that the jurors were at liberty to consider the alleged state-

**5. TRIAL: impeachment of verdict.** ments of the witness Scott to Richards, regarding the killing of McNulty. The instructions of the court were clear, and it is difficult to conceive how the jurors could have understood they were to consider evidence twice specifically withdrawn from their consideration. Jurors should not be permitted to thus impeach their verdict. *Strand v. Grinnell Auto. Gar. Co.*, 136

Iowa 68; *State v. Dudley,* 147 Iowa 645; *State v. Rand,* 170 Iowa 25.

The record comes before us in the form of a typewritten transcript, and we have examined the same carefully. Many instructions were requested by the defendant, and exceptions taken to the charge of the court; but we find no error in refusing the requested instructions, and the charge of the court is full, clear, and eminently fair. It is quite apparent that defendant was accorded a fair and impartial trial, and the verdict of the jury is fully warranted by the evidence. As we find no error, the judgment of the court below must be, and is,—*Affirmed.*

PRESTON, C. J., LADD, EVANS, GAYNOR, and SALINGER, JJ., concur.

WEAVER, J. (dissenting). The cross-examination of the defendant upon matters in no manner referred to on her direct examination exhibits wanton and utter disregard of the statute which provides that the cross-examination of an accused person testifying in his own behalf "shall be strictly confined to the matters testified to in the examination in chief." Code, Section 5485. The cross-examination of defendant's husband was, if possible, even less justifiable, and should have been rigidly excluded. The course pursued in these matters was a manifest (and apparently quite successful) effort to drag in irrelevant and collateral matter, not because it had any tendency to establish defendant's guilt, but to prejudice her and her witnesses in the minds of the jurors. The State should not lend itself to this kind of unfair practice, and convictions so obtained should not be upheld. *State v. Thompson,* 127 Iowa 440, 442; *People v. Gotshall,* 123 Mich. 474 (82 N. W. 274) ; *People v. Crapo,* 76 N. Y. 288, 292; *Buel v. State,* 104 Wis. 132 (80 N. W. 78) ; *Allen v. United States,* 52 C. C. A. 597; *People v. Rod-*

*riguez,* 134 Cal. 140; *Johnson v. State,* 8 Wyo. 494; *State v. Grant,* 144 Mo. 56.

In my judgment, the judgment below should be reversed.