STATE OF IOWA, Appellee, v. JOHN BIRD, Appellant.

**CRIMINAL LAW:** Appeal and Error—Withdrawal of Testimony. The
1 withdrawal by the court of improper testimony ordinarily cures the error.

**CRIMINAL LAW:** Argument—Necessity For Record. Ordinarily, the
2 court will not heed the objection of improper argument by the State in a criminal case, in the absence of a record showing both arguments.

**CRIMINAL LAW:** Verdict—Impeachment. Jurors will not be per-
3 mitted to impeach their verdict of guilty by subsequent affidavits expressing a belief in the innocence of the accused.

**CRIMINAL LAW:** New Trial—Cumulative Newly Discovered Evi-
4 dence. New trials are not ordinarily granted for newly discovered evidence,—let alone when it is cumulative only.

*Appeal from Monona District Court.*—MILES W. NEWBY, Judge.

JUNE 22, 1923.

REHEARING DENIED SEPTEMBER 28, 1923.

THIS defendant and Mikey Brienzo, Tony Brienzo, and Louis Venick, were charged with the crime of robbery. It is alleged that the parties so charged were armed with deadly weapons, and that they took from the person of Mike Stashevsky $2,000 in money and a Buick automobile, all of the value of $3,500. Upon the trial as to the defendant, Bird, he was found guilty by the jury, and judgment pronounced. He appeals.— *Affirmed.*

*Henderson, Fribourg & Hatfield* and *Edward E. Baron,* for appellant.

*Ben J. Gibson,* Attorney-general, *B. J. Flick,* Assistant Attorney-general, *J. A. Pritchard,* and *George Pritchard,* for appellee.

PRESTON, C. J.—1. The robbery is alleged to have taken place at about 6 o'clock in the evening of October 10, 1921, at or near a farmhouse some distance from Sioux City. The prosecuting witness and one Jake Kriv started from Sioux City in an automobile, to go to Chicago. They contemplated purchasing property in Chicago. It is claimed that Stashevsky had $2,000 in money on his person for that purpose. The two so testify, and an uncle of Stashevsky's testifies that he had paid Mike that amount shortly before or at about the date stated. Before they left Sioux City, this defendant was informed that they, or Kriv, had not yet gone to Chicago, but expected to go that afternoon. After they proceeded east some distance, they stopped their car, to fix the tire carrier, when they observed a Studebaker car passing them. The Studebaker car had the top back, and in it they recognized the defendant, Bird, and the other three. After repairing their car, Kriv and Stashevsky started down the road, and saw the car which had passed them standing in front of them. They say they feared that the occupants of the Studebaker car were intent upon robbing them, and instead of proceeding down the main road, they turned to a side road,

and at some distance turned into the driveway near a farm-house. The Studebaker car followed, and when the Buick car stopped in the driveway, the occupants of the other car, including this defendant, jumped from their car, and at the point of revolvers demanded that Kriv and Stashevsky should halt. One of the defendants struck Stashevsky on the head with a gun, and they took from him the $2,000 in money which he had in his pocket. Stashevsky testifies, in part:

"That boy and Mikey Brienzo stick gun in here, and this first man he hit me, and Mikey says 'You have money;' and I said, 'No.' John Bird talked Russian, says, 'I kill you if you talk to him or talk in Russian he kill me.' I didn't say a word, and he hit me in the head, and Mikey stick gun, and then he took my money. He slit my pants from here to here. He hit me with revolver,—mark and blood on my head. Mikey Brienzo and John Bird ask me 'Have you got it?" and Mikey says, 'Get off from the car.' They took $2,000 cash and car. He leave me in that place without car, and I go to farmhouse, and I hollered to the farmer, 'He took my $2,000 and car.' I called up Sioux City at that time. I find my car in Salix. They started backing car, and started to shoot. They shot about nine or ten times. When they hit me on the head, it hurt me. I have blood all around, and I have excited after that."

Defendants then drove the two cars down the road, and left the Buick abandoned some distance from the scene. Kriv and Stashevsky went immediately to the farmhouse occupied by one Johnson and wife, and told them of what had just occurred, and named the parties who had committed the robbery, including the name of defendant, Bird. Mrs. Johnson dressed Stashevsky's head. Later in the night, about 1 or 2 A. M., they caused Johnson to call the police at Sioux City and Onawa and other towns, to tell them of the robbery, and gave to the police the names of the persons implicated, including defendant, Bird. Kriv gave similar testimony. Stashevsky had known Bird for a long time. Bird was identified by him and Kriv as one of the robbers. The robbers were not masked.

This, in a general way, is the evidence for the State. Other witnesses testified as to other matters. The defendant sought to establish an alibi. There was a conflict in the evidence, but it

was sufficient to take the case to the jury and to sustain the conviction. This disposes of the first and second assignments of error, as to the sufficiency of the evidence.

2. It is next assigned as error that the court erred in admitting improper prejudicial testimony on the part of the State, over objections by defendant, and in failing to strike testimony

1. CRIMINAL LAW: appeal and error: withdrawal of testimony.

from the record. The page of the abstract is not given either in the assignment of error or in the brief point, showing where this matter may be found. Since this is a criminal case, we have gone further than required by the rules, and find the page of the abstract referred to in the statement of facts in appellant's brief. As we understand the record, this assignment has reference to the admission in evidence of statements by witnesses for the State, that Kriv and the prosecuting witness first stated the names of the persons who had committed the robbery immediately thereafter, and that, later in the night, they gave the names to the police. The first statement was immediately after the robbery, and at the scene of the robbery, when, as the evidence shows, the parties were excited. So far, we think, the evidence was clearly admissible, under the doctrine of *res gestæ*. *State v. Guidice,* 170 Iowa 731, 749; *Hinnah v. Seaba,* 193 Iowa 1206, 1218.

As to the conversation over the phone, later in the night, a part of the evidence, and that the parties were named, went in without objection. Kriv testifies:

"I then went into the farmhouse. I told the farmer to call up as quick as possible all around this territory, and to call Sioux City, because the people was from Sioux City. I talked to the sergeant of the Sioux City police that night, about 1:30 or 2 o'clock in the morning. I talked with the Sioux City police over the phone just as quick as I could get it. I told them who held us up."

"Q. Who did you tell them?"

Over proper objection, the court stated that he thought it was a part of the *res gestæ,* and permitted witness to answer that he told Mrs. Johnson who the parties were, as soon as they got in the house, and told her to call the Sioux City police, and told the police that John Bird and the other three defendants were

the persons.  Later during the trial, the trial court concluded
that as to the statements to the police the evidence was not *res
gestæ,* sustained the objection, withdrew the evidence, and di-
rected the jury not to consider it.  Both Kriv and Stashevsky
testified as witnesses on the stand to the same thing,—that is,
as to who the parties were; so that, at the most, such a statement
the same night was merely cumulative.  The purpose of tele-
phoning the police was that the offenders might be apprehended,
rather than to establish the identity which had been testified
to by the same witnesses.  *State v. Hickman,* 195 Iowa 765.
Under all the circumstances just enumerated, we are clear that
there was no prejudicial error in this respect.  We have held
that, where evidence was first admitted and thereafter excluded
and withdrawn from the consideration of the jury, it was with-
out prejudice.  *State v. Lounsbury,* 178 Iowa 555, 557.

3.  It is thought by appellant that there was misconduct of
attorneys for the State in their method of examining witnesses,
in the opening argument to the jury, and in the closing argu-

2. CRIMINAL LAW:
argument: nec-
essity for record.

ment.  Some of the statements of counsel appear
to have been in response to argument for the
defendant.  Counsel for the State so claimed.
Objections to other statements, when objection was made, were
sustained, and the court admonished counsel, and directed the
jury not to consider the same.  It often happens, in the trial of
criminal cases, that counsel for the defense abuse the State's
witnesses and attorneys, refer to defendant's wife and small
children, the horrors of prison bars, and the like, in the attempt
to secure an acquittal, in which case no new trial may be granted
therefor.  The thought seems to be that this may be done, but
that the State's attorneys must be held strictly to the rule.  *State
v. McClure,* 159 Iowa 351; *State v. Hickman,* 195 Iowa 765.  The
arguments for the defense are seldom taken down, so that it is
impossible for this court to get the case as it was presented to
the trial court.  We could judge better whether there was mis-
conduct on the part of attorneys for the State if we had all the
arguments before us.  The trial judge must be present at all
stages, and hears all the arguments.  He heard it all, and in
overruling the motion for new trial, necessarily held that there
was no prejudice.  We give weight to the judgment of the trial

court. *State v. Norman,* 135 Iowa 483, 488; *State v. Hickman,* 195 Iowa 765. As to the alleged misconduct of the attorneys for the State, see, also, *State v. Tippet,* 94 Iowa 646, 652, 653; *State v. McClure,* 159 Iowa 351; *State v. Hickman,* 195 Iowa 765. It is a safe rule to say that the examination of witnesses and the conduct of the trial are largely matters for the trial court, as is the question whether either party has been prejudiced by the conduct of the other; and its action will not be interfered with on appeal, unless the discretion lodged in it has been abused. We have so held. *State v. Johns,* 152 Iowa 383; *State v. Norman,* 135 Iowa 483; *State v. McClure,* 159 Iowa 351, 355. Error is not made to appear at this point.

4. The next assignment is in regard to the alleged misconduct of the jury and of the bailiff in charge of them. It is first claimed that the bailiff made improper statements to some of the jurors. As to this matter there were no affidavits by the jurors themselves. Those filed were by the wife of the defendant and others, and they were met by counter affidavits filed by both bailiffs. Here again the finding of the trial court will be given weight.

5. It is also assigned as error that there was misconduct of the jury, in that statements were made by some of the jurors to the others while deliberating, as to the personal knowledge of the former with reference to material matters. Affidavits of two of the jurors were filed. The affidavits do not state that any statements were made by any juror as of his personal knowledge. The substance is that, during the discussion, some reference was made to rumors; that, but for such rumors or discussion, they do not think that a verdict of guilty would have been returned; and that they do not think defendant is guilty. Every lawyer knows that frequently such affidavits are prepared in advance, and that the juror signs on a dotted line. We do not intend to imply that there is necessarily any impropriety in this. It frequently happens that the affidavit is not as the affiant understood it, and sometimes they come in with affidavits modifying the same. Occasionally, jurors are persuaded after a verdict to excuse their finding. Sometimes they say that they were compelled to find such a verdict because the court so directed them in the instruc-

3. CRIMINAL LAW: verdict: impeachment.

tions. This is never true, because the instructions are always stated hypothetically, leaving the jury to find the facts. A juror who, under his oath as juror, returns a verdict and then files an affidavit to the contrary in a sense commits perjury. Morally it is so, even though it may not be legal perjury. We have said in some of the cases that, if this may be done, few verdicts would stand. The matters complained of in the instant case inhere in the verdict. *State v. Dudley,* 147 Iowa 645, 653; *State v. Brennan,* 185 Iowa 73, 78; *State v. Rand,* 170 Iowa 25, 32; *State v. Teale,* 162 Iowa 451, 463.

6. Lastly, it is thought that the court should have granted a new trial on the ground of newly discovered evidence. This is assigned as error, and cases are cited in the brief point, but

4. CRIMINAL LAW: new trial: cumulative newly discovered evidence.

not otherwise argued. The affidavits of two persons were filed with the motion for new trial. The affidavits are brief, and are to the general effect that Kriv and the prosecuting witness were hauling liquor. The matter was gone into to some extent on the trial, and was denied by evidence for the State. Newly discovered evidence, in criminal cases, is not a statutory ground for a new trial, and ordinarily a new trial will not be granted on this ground. In the instant case, the evidence is, at best, merely cumulative and impeaching. It is of little consequence, and would not be likely to change the result. The court did not err in overruling the motion on that ground. *State v. Pavey,* 193 Iowa 985, 992; *State v. Leuth,* 128 Iowa 189, 194.

No reversible error appearing, the judgment is—*Affirmed.*

WEAVER, STEVENS, and DE GRAFF, JJ., concur.