STATE OF IOWA, appellee, v. MARTIN BRIGHTMAN, JR., appellant.

No. 50322.

(Reported in 110 N.W.2d 315)

AUGUST 15, 1961.

Charles W. Bowers, of Des Moines, for appellant.

Evan Hultman, Attorney General, John H. Allen, Assistant Attorney General, Harry Perkins, Jr., Polk County Attorney, and Thomas P. Hyland, Assistant County Attorney, all of Des Moines, for appellee.

PETERSON, J.—Defendant was convicted of grand larceny, and sentenced to five years in the Men's Reformatory at Anamosa.

March 30, 1960, Albert B. Burgess took his suit to Cardinal Cleaners, located at 2300 Harding Road, Des Moines, for cleaning and pressing. The business was operated by George Saluri. He also operated Royal Cleaners, 1700 East Grand. The evidence discloses he moved suits from one location to the other to be serviced, depending on conditions of labor and machinery.

April 8, 1960, a burglary was committed at Royal Cleaners. Windows were broken, and whoever committed the burglary reached through the broken window, and removed goods hang-

ing on a rack about a foot inside the window. Mr. Saluri lost two suits; one belonging to Burgess and one to Blaskovich.

September 12, 1960, under a search warrant, two detectives from the Des Moines police force found the Burgess suit in the closet of defendant's home. Defendant was indicted for larceny and entered a plea of not guilty.

On trial the jury found defendant guilty. He has appealed.

Defendant assigns four errors as a basis for dismissal or reversal: 1. The State failed to produce evidence from which the jury could find the Burgess suit was at Royal Cleaners where the burglary occurred; also that finding the suit five months after the theft, in defendant's possession, was not sufficient evidence to permit an inference of theft by defendant. 2. The court erred in giving Instruction No. 7. 3. The court erred in permitting Burgess, over proper objection, to testify the suit was worth $100 at the time it was stolen. 4. The court erred in overruling defendant's motion for new trial on the ground of newly discovered evidence.

██ I. To warrant the inference of guilt from the possession of stolen property there must be proof that: 1. The property described in the indictment was stolen. 2. The property possessed by the accused was the stolen property. 3. The possession was reasonably recent; the length of time depending on the nature of the goods involved.

██ The question is whether there was sufficient competent evidence so that the jury could find that Mr. Burgess' suit which he had left at Cardinal Cleaners on March 30 was transferred to Royal Cleaners before the night of April 8, when the burglary occurred. State v. Gates, 246 Iowa 344, 67 N.W.2d 579; State v. Johnson, 210 Iowa 167, 230 N.W. 513; 32 Am. Jur., page 1046, section 136; page 1052, section 140.

Mr. Saluri testified:

"In April we were not doing all our cleaning at 2300 Harding Road. [Cardinal Cleaners] Some days it would be according to how much labor we had in one location or the other * * *

"Q. At that time the cleaning that was brought to Harding Road could have been cleaned at 1700 East Grand? A. Some could have been, yes.

1282

"Q. After the break-in, sir, did you check your records? A. Yes, I did.

"Q. Would you tell us what, if anything, you found missing? A. We found at our Harding Road plant two suits were missing, one for Mr. Burgess and one for William Blaskovich.

"Q. Did you give anyone permission to take these suits? A. No.

"Q. Then to your knowledge these suits were stolen from either one of those plants? [no objection] A. Yes. * * *

"Q. You do know, however, and you have testified that at this time you were transferring clothes from the Harding Road plant to the East 17th and Grand plant? A. Well, yes."

Mr. Charles Swertfager, the insurance claim agent, testified:

"Q. Did you make out a report on this breaking and entering? A. Yes, I did.

"Q. Did you, in your report, include what had been stolen? A. Yes, sir.

"Q. And what did you put in that report? [no objection] A. Two men's suits.

"Q. Would you describe a little more fully the windows that were broken out? A. There are steel sash windows * * * in the lower part of the steel sash window, on the south there is a rack where they took the clothes.

"Q. Was it a window where the clothes rack is that was broken out? [objection as leading; overruled] A. Yes, sir."

There was sufficient evidence, direct and circumstantial, from which a jury could find the Burgess suit had been removed from Cardinal Cleaners at No. 2300 Harding Road to Royal Cleaners at No. 1700 East Grand where the burglary occurred. The evidence offered by the State was not contradicted at the trial.

■ Appellant's counsel contends the time between the burglary and finding the Burgess suit in defendant's closet (five months) was too long to meet the test of "recent" discovery of possession.

■ "Recent" discovery of possession is not necessarily measured by the number of hours or days or weeks involved. The nature of the articles and the circumstances of the case are

pertinent elements. The length of time is a question to be considered by the jury together with all other factors in the case. State v. Stanton, 172 Iowa 477, 154 N.W. 762, Ann. Cas. 1918A 813; State v. Gates, supra; State v. Walker, 41 Iowa 217; State v. Fortune, 196 Iowa 995, 195 N.W. 740; State v. Perry, 165 Iowa 215, 145 N.W. 56; State v. Bohall, 207 Iowa 219, 222 N.W. 389; 52 C. J. S., Larceny, page 927, section 106.

As to the character of the stolen goods it depends to some extent on whether they are readily and easily transferable; light or heavy; easy or hard to identify. Mr. Burgess' suit, with his name sewed into it, was not easily transferable from person to person. When the officers found the suit the Burgess name was partly scratched out. Mr. Burgess testified he could easily identify the suit and his name through the scratch marks.

In the case at bar the jury can well consider a longer period more detrimental to defendant than a few days. Wearing or offering the suit for sale in a few days after the usual publicity would be dangerous to the person involved, whereas letting it rest quietly in his closet for several months created a possibility of no discovery.

52 C. J. S., Larceny, section 106, page 927, states:

"Whether the interval of time between the larceny of the property and its possession by accused is sufficiently short or long to render the possession recent or remote depends on the facts of the particular case, including the character of the property stolen, the test of recency being: Was the interval so short as to render it morally or reasonably certain that there could have been no intermediate change of possession?"

In State v. Stanton, supra, on March 5, 1914, a tailor shop was broken into. Several pieces of cloth and several pairs of trousers were taken. When defendant's premises were searched in July, he claimed he could not find the keys to his trunk, but it contained dirty clothes. When the trunk was opened they found a suit of clothes, a piece of goods and a pair of trousers, all identified as those taken in the burglary. Defendant claimed he bought the goods from a peddler for $18. He claimed the possession was too remote to sustain conviction. The court held the question of whether possession was recent was for the jury.

The period from burglary to discovery of possession was four months. Defendant was convicted. This court said at page 479 of 172 Iowa: "The word 'recent', as applied to possession, cannot be defined as any definite time. Whether recent enough to warrant the inference of guilt necessarily depends on the circumstances of each particular case. * * *."

In State v. Bohall, supra (at page 221 of 207 Iowa), we said: "The rule that recent possession of stolen property may be considered by the jury as evidence of guilt is too well settled in this state to need citation of authority."

In the very early case of State v. Walker, supra, it was stated at page 219 of 41 Iowa: "What is to be deemed recent possession depends very much upon the character of the goods stolen. If they are such as pass readily from hand to hand, the possession, in order to raise a presumption of guilt, should be much more recent than if they were of a class of property that circulated more slowly or is rarely transmitted. * * *."

In the following cases the period from burglary to discovery of possession was rather lengthy, as in the case at bar, but was held by the jury to be "recent": Wiley v. State, 92 Ark. 586, 124 S.W. 249, three months; Boehm v. United States, 2 Cir., N. Y., 271 F. 454, four and one-half months; McHenry v. State, 52 Okla. Cr. 20, 2 P.2d 597, eight months; State v. Miller, 45 Minn. 521, 48 N.W. 401, eleven months.

Recent possession by a defendant of stolen property is evidence of guilt, and, unless the explanation of such possession creates a reasonable doubt of defendant's guilt, a jury is justified in returning a verdict of guilty. State v. Gates, State v. Bohall, and State v. Fortune, all supra; State v. Vandewater, 203 Iowa 94, 212 N.W. 339; 52 C. J. S., Larceny, section 105, pages 924 to 926.

The statements and actions of defendant, when the possession of the stolen goods was discovered, are circumstances a jury may take into consideration. Detectives Lester L. Kellogg and James McCarthy entered defendant's house, under a search warrant obtained under the following circumstances:

Detective Kellogg testified: "Q. What was the nature of your visit? [no objection] A. We had received a tip that Marty

had in his possession a suit which had been taken from a break-in."

Detective McCarthy also testified: "I found the coat first. When we first entered, Mr. Brightman was very congenial. After I found the coat I asked him where the pants were, and he said 'I don't know where they are' and walked out of the room."

They found the pants, and at the trial Mr. Burgess identified the suit as his suit, which he took to Cardinal Cleaners on March 30. Detective McCarthy asked Brightman where he got the suit, and he said he bought it from an over-the-road truck driver for $10. It should be noted defendant placed the seller as a person almost impossible to identify or question.

Defendant offered no testimony at the trial. He made no attempt to explain his possession of stolen goods, except the above statement.

■ II. Appellant alleges the court committed error in certain statements in Instruction No. 7. This contention was made only in the motion for new trial. Appellant requested additional statements in the instruction for the first time in this court. The attorney presenting the case in this court was not the same attorney as the one who tried the case in the district court.

Such changes or additions should have been raised in requested instructions, or in exceptions to the instruction. State v. DeKoning, 223 Iowa 951, 274 N.W. 25; State v. Warren, 242 Iowa 1176, 47 N.W.2d 221; State v. Schenk, 236 Iowa 178, 18 N.W.2d 169; State v. Walters, 244 Iowa 1253, 1261, 58 N.W.2d 4, 8; State v. Albertson, 237 Iowa 1148, 1153, 24 N.W.2d 395, 397; State v. Mart, 237 Iowa 181, 185, 186, 20 N.W.2d 63; 66.

In accordance with section 793.18 of the Code of 1958, we will give brief attention to defendant's contentions.

The specific objections to the instruction in this court were: 1. "The instruction failed to define the term 'recent' and 'soon after'"; and 2. "The instruction erroneously stated in effect that recent possession of stolen property creates a presumption of guilt, without saying how recent the possession should be."

■ The trial court could not instruct as to "recent" possession, to the effect that a specific number of hours, days, weeks,

or even months were involved. The court said: "What is recent possession of stolen property in one case, in order to create a presumption, might not be sufficient in another. The time which can be said to be recent will depend upon the character of the property, and the ease and readiness with which it can pass from hand to hand in the ordinary affairs of life."

This is in accord with State v. Walker, supra, from which we have quoted in Division I. This is supported by later cases, also cited.

Appellant does not correctly interpret the court's Instruction No. 7 as to "recent possession creating a presumption of guilt." Not only Instruction No. 7, but all instructions must be read and considered as a whole, to arrive at the court's full meaning. State v. Fortune and State v. Gates, both supra; State v. Sampson, 248 Iowa 458, 79 N.W.2d 210; State v. Hobbs, 1961, 252 Iowa 439, 107 N.W.2d 242; State v. Katz, 241 Iowa 115, 40 N.W.2d 41, 45; State v. Heinz, 223 Iowa 1241, 275 N.W. 10, 114 A. L. R. 959; State v. Mart, 237 Iowa 181, 20 N.W.2d 63. What in fact the court said about "presumption of guilt" was: "possession * * * does not in itself create a presumption or amount to prima-facie proof that the defendant is guilty of stealing said property; * * * the presumption is one which can be rebutted or explained, and it is always open to the defendant * * * to show that he came into the possession thereof by other means than that of larceny."

The court directed specific attention to the statement made by defendant to the detectives that he had purchased the suit for $10 from an over-the-road truck driver, and that the jury should consider such explanation as to possession.

The instruction was eminently fair to defendant, and when considered as a whole, and with all instructions, we find no reversible error.

III. The question of the value of the stolen suit was important, in order to determine the dividing line as between petty and grand larceny. Appellant contends the court erred in permitting Mr. Burgess to testify as to the value of the suit when stolen, over objection, timely made.

Mr. Burgess testified: "Q. Would you tell us in money

how much the suit was worth at the time it was stolen? [Objection duly made and overruled.] A. It was worth $100."

He also testified the suit had cost him $108, and when he bought a new suit, after the theft, it cost him $115.

An owner is competent to testify as to the value of clothing purchased by him in the ordinary course of trade. Ruth v. O'Neill, 245 Iowa 1158, 66 N.W.2d 44; State v. Strum, 184 Iowa 1165, 169 N.W. 373; Thomason v. Capital Insurance Co., 92 Iowa 72, 61 N.W. 843; 52 C. J. S., Larceny, section 118, page 942.

See C. J. S., Larceny, supra: "* * * in the case of ordinary clothing the possession of only such knowledge as any person of ordinary intelligence has regarding its value seems to be sufficient, especially where the witness is the owner and testifies that he had priced articles of the same kind."

In the instant case Mr. Burgess' testimony was admissible and sufficient to submit the case to the jury. Defendant offered no testimony to the contrary.

IV. Appellant's counsel places great emphasis on the court's failure to grant a new trial on the basis of newly discovered evidence. Attached to the motion for new trial were the affidavits of two clerks who had worked for several years at Royal Cleaners where the burglary occurred. They stated that at no time had any clothing been brought from Cardinal Cleaners, where Mr. Burgess left his suit, to Royal Cleaners. This contradicted the testimony of Mr. Saluri and his two workmen.

In connection with hearing on motion for new trial David Dukes testified: "I am employed at Royal Cleaners and have been there six or seven years as a cleaner, presser and spotter. * * * George Saluri did own the Royal Cleaners at 1700 East Grand and I worked there at that time. George Saluri also owned the Cardinal Cleaners. George Saluri has brought me clothes from the Cardinal Cleaners to be cleaned at 1700 East Grand. When I finished cleaning and pressing the clothes I hung them on the finish rack. I recall the break-in and the window that was broken. Some of the clothes I hung by the safe about a foot from where the window was broken out."

Mr. William Magnusson testified at the same hearing: "I have been working for Cardinal approximately four years. * * * I was working for Mr. Saluri last April and at that time he owned the Royal Cleaners * * *. Mr. Saluri would pick clothes up from our main plant at 2300 Harding Road and he would pick me up at our branch office at Sixth and Indiana and take me over from there to Royal at 1700 East Grand. I would stay at 1700 East Grand and press some clothes brought from 2300 Harding Road. * * * After the clothes were pressed they were hung on a line by the safe which was located a short distance from the window."

 Unless there clearly appears to be a miscarriage of justice, the discretion of the trial court in overruling a motion for new trial will rarely be disturbed. State v. Endorf, 219 Iowa 1321, 260 N.W. 678; State v. Benson, 247 Iowa 406, 72 N.W.2d 438; State v. Addison, 250 Iowa 712, 95 N.W.2d 744; State v. Bird, 196 Iowa 474, 480, 194 N.W. 73; State v. Johns, 152 Iowa 383, 132 N.W. 832; State v. McClure, 159 Iowa 351, 140 N.W. 203.

Defendant rested at his trial without testifying or offering any evidence in his defense.

 The affidavits of the two proposed witnesses merely impeach the testimony of Mr. Saluri and his two workmen. We have often held such support of a motion is not sufficient to justify another hearing. State v. Endorf and State v. Bird, both supra; State v. Sangster, 196 Iowa 495, 192 N.W. 155; State v. King, 97 Iowa 440, 66 N.W. 735; 23 C. J. S., Criminal Law, section 1459, page 1243.

In State v. Bird, supra, this court said: "Newly discovered evidence, in criminal cases, is not a statutory ground for a new trial, and ordinarily a new trial will not be granted on this ground. In the instant case, the evidence is, at best, merely cumulative and impeaching. It is of little consequence, and would not be likely to change the result. The court did not err in overruling the motion on that ground."

The trial court heard the testimony, saw the witnesses, and had the opportunity to observe their demeanor and frankness, or lack thereof.

We hold the situation in the case at bar does not create one of the rare cases where we should overrule the broad discretion of the trial court as to a new trial.

The case is affirmed.—Affirmed.

All JUSTICES concur.