STATE, Respondent v. ELLESTAD, Appellant

(225 N.W. 2d 879)

(File No. 11374. Opinion filed February 12, 1975)

A. William Spiry, Britton, **T. R. Pardy, Mumford, Protsch,** Sage & Pardy, Howard, for defendant and appellant.

**Kermit Sande,** Atty. Gen., **Galen J. Vaa,** Asst. Atty. Gen., Pierre, **Myles DeVine,** Marshall County State's Atty., Britton, for plaintiff and respondent.

WOLLMAN, Justice.

Defendant was found guilty by a jury on a charge of grand larceny and was sentenced to serve forty months in the state

penitentiary. We agree with his contention on appeal that the evidence was insufficient to support the verdict, and we reverse the judgment of conviction.

On December 29, 1971, Howard and Phillip Oland, father and son, drove 108 head of livestock, consisting of 106 cows and two bulls, from the elder Mr. Oland's farmstead, located approximately six miles southwest of Veblen, Marshall County, South Dakota, to another farmstead some two miles southwest at which the Olands had facilities for feeding and watering the cattle.

At 4:45 a.m. on January 6, 1972, Howard Oland received a telephone call informing him that the barn on the property where the cattle were being kept was on fire. By the time that he and his son arrived at the scene the barn "was just about burnt down." After the fire had been extinguished, the Olands discovered the burned remains of nine cows in the ruins of the barn. A count of the livestock revealed that in addition to the nine cows that had burned to death, sixteen others were missing. A search of the feedlot area around the barn revealed no livestock tracks in the snow. A check with the neighbors in the immediate area revealed no trace of the missing cows.

There was testimony by Howard Oland that prior to the fire he had wired a gate up inside the barn to prevent the cattle from going to the shop area on the east end of the barn and that after the fire "* * * the wire was taken up * * *". Although somewhat unclear, Mr. Oland's testimony about the post-fire condition of the back door of the barn would support a finding that after the fire the door was closed and that a big chain that had been used to hold it open was lying at the point where the door was closed.

As has been stated, a search of the area revealed no trace of the sixteen missing cows. While attending a livestock auction in Sisseton, South Dakota, on March 8, 1973, Howard Oland observed one of his sixteen missing cows in the sale ring. Based upon physical markings (he described the cow as a shorthorn roan with a spot on its forehead) and a brucellosis test ear tag number, Mr. Oland was able to positively identify this cow as

being one that he had purchased on February 25, 1971, and as one of the sixteen cows that was missing after the fire on January 6, 1972. A check of the livestock sale records indicated that the cow had been consigned for sale by defendant.

There was no evidence linking defendant to the disappearance of the cow other than the fact of his possession some fourteen months after the date of the fire and disappearance of the sixteen cows. There was testimony by Howard and Phillip Oland that they had seen defendant driving by on the road past the farmstead at which the fire occurred a number of times prior to the fire; Phillip Oland testified that in his opinion defendant's reason for being in the area would have been to visit his wife's parents, who live approximately one-fourth mile southeast of the scene of the fire.

The owner of the Sisseton livestock auction market, called as a witness on behalf of the state, testified that defendant frequently bought and sold cattle of all colors and descriptions at the Sisseton livestock auction. Defendant testified that during the year 1972 he owned approximately 45 to 48 cows, consisting of shorthorns, herefords and hereford-shorthorn cross cows. He testified that during 1972, after January 6th, he had purchased approximately 25 to 30 head of cattle, including between six and eight shorthorn roan cows, from some six or seven different livestock auction sale barns. He introduced exhibits tending to support the fact that he had purchased a number of cows and that at least one of them was a shorthorn roan cow. He testified that the only way he could have gotten possession of the Oland cow was "* * * she had to be bought or she had to be strayed on my farm someway; but evidently it was the cow I bought."

Although the state introduced no evidence concerning the possible cause of the barn fire, the fair import of Howard Oland's testimony was that someone had closed the back door of the barn and had unwired a gate within the barn prior to the fire. This testimony tended to explain why out of 108 head of livestock only nine were trapped in the barn and supported the inference that the sixteen missing cows had been taken immediately prior to the fire. The absence of livestock tracks in the snow around the

feedlot also supported the inference that the sixteen cows had been taken from the barn and that they had not milled about near the feedlot and wandered away.

 Granting that the state established the corpus delicti, State v. James, 39 S.D. 263, 164 N.W. 91; cf. State v. Beard, 34 S.D. 76, 147 N.W. 69, we do not think that the evidence supports the conviction. The trial court correctly refused to give the state's requested instruction concerning the effect of the unexplained possession of stolen property. This proposed instruction, which was patterned on South Dakota Pattern Jury Instruction (Criminal) 3-7-370c, differed from the pattern jury instruction in that it omitted the requirement that the possession of the stolen property be recent. Although the unexplained possession of recently stolen property is a sufficient circumstance upon which to base a conviction, see State v. Larkin, 87 S.D. 61, 202 N.W.2d 862, and cases cited therein, it is the element of recency that gives the circumstance of unexplained possession its probative value and justifies an inference of guilt on the part of the possessor. 50 Am.Jur.2d, Larceny, § 162; State v. Dancyger, 29 N.J. 76, 148 A.2d 155. The test of recency is whether the interval between the date of the alleged theft and the date of possession is so short as to render it morally or reasonably certain that there could have been no intermediate change of possession. 50 Am.Jur.2d, Larceny, § 162; 52A C.J.S. Larceny § 106; State v. Brightman, 252 Iowa 1278, 110 N.W.2d 315; State v. Wilson, 198 Kan. 532, 426 P.2d 288. In determining whether the possession of stolen goods can be characterized as recent, the circumstances and character of the goods, their saleability and whether they are readily and easily transferable are among the factors to be considered along with the length of time involved. 50 Am.Jur.2d, Larceny, § 162, 52A C.J.S. Larceny § 106; State v. Brightman, supra.

In the instant case, the evidence clearly showed that defendant was actively engaged in buying and selling livestock at numerous livestock sales barns during the period from January 6, 1972, until March 8, 1973, and that he had a sales receipt showing the purchase of at least one roan cow. Further, the testimony of the owner of the Sisseton livestock sales auction, one of the state's witnesses, was that brucellosis identification tags are

not routinely checked and that in fact the ear tag on the Oland cow was the only one that was checked at this sale barn during the time in question. In other words, it appears that cattle are readily bought and sold in the Marshall County area without any proof of ownership or the recording of any ear tag numbers, so that the shorthorn cow in question could have been sold by an unidentified third party and purchased by defendant during the fourteen-month interval.

■ We have not overlooked the state's argument that there were apparent alterations in the exhibits submitted by defendant, including an apparent attempted erasure of the words "not vac" in the sales slip showing his purchase of a roan cow. The jury might well have disbelieved defendant's explanation of his possession of the Oland cow. However, "* * * a disbelief of the evidence for the defense does not permit the jury to act upon a belief to the contrary when there is insufficient evidence to support such belief." State v. Kenstler, 59 S.D. 441, 443, 240 N.W. 489.

■ Other than defendant's possession of the cow some fourteen months after the date of the theft, there was no probative evidence, either direct or circumstantial, linking defendant with the theft. The trial court correctly refused to instruct the jury that the fact of defendant's possession of the cow would be a circumstance sufficient upon which to base a conviction. The evidence was insufficient to sustain the verdict and defendant's motion for a new trial should have been granted.

The judgment of conviction is reversed.

DUNN, C. J., and WINANS and COLER, JJ., concur.

DOYLE, J., concurs specially.

DOYLE, Justice (concurring specially).

I concur in the opinion as written. However, it should be pointed out that the presence of the "brucellosis test ear tag" with its identification number is, in my judgment, more consistent with the defendant's innocence than his guilt. Certainly, an individual having stolen an animal would remove such a ready

form of identification before attempting to sell the animal. Such a removal is readily accomplished with a pair of tin snips or pliers. This procedure would have, in my judgment, occurred to a thief.