STATE of South Dakota, Plaintiff
and Appellee,

v.

Randy Lee CLOSS, Defendant
and Appellant.

Nos. 14622, 14623.

Supreme Court of South Dakota.

Considered on Briefs Feb. 6, 1985.

Decided April 10, 1985.

Mark Smith, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on the brief.

Patricia C. Riepel, Minnehaha County Public Defender, Sioux Falls, for defendant and appellant.

WUEST, Acting Justice.

Randy Lee Closs (appellant) was found guilty of second-degree burglary, third-degree burglary, grand theft, and petty theft. Appellant appeals and we affirm.

Rick Johnson (Johnson) parked his unlocked automobile in the rear of his duplex on the evening of January 27, 1983. The vehicle was equipped with an eight-track tape player mounted by a bracket under

the dashboard which supported a CB radio. The bracket was custom made by Johnson. The next morning, Johnson went to his vehicle and noticed that the bracket, tape player, and radio were missing. He also noticed footprints in the snow on the passenger side of the automobile. These footprints had a "V" pattern and were similar to tracks made by the boots later removed from appellant. Johnson reported the theft to the police. Police investigators followed the footprints in the snow from Johnson's automobile to the home of appellant and his father. That afternoon, pursuant to a search warrant, police found the stolen bracket hidden behind other objects under a couch in appellant's residence. Appellant was arrested and while being booked he removed two screws and two bolts from his pocket similar to the ones used to mount the radio and tape player on the bracket. The radio and tape player were never found.

During an inventory of appellant's billfold a small frayed envelope was found which contained five diamonds and one amethyst stone. These were items which had been stolen from Janet Gullickson (Gullickson) sometime on December 25, 1982. Investigation of that burglary also included following footprints in the snow. When backtracking these footprints, the police found that they also originated at appellant's residence although they were not made by the boots removed from appellant in the Johnson incident.

As a result of these investigations, appellant was charged with burglary in the third degree and grand theft regarding the Johnson incident; and in a different complaint, appellant was charged with burglary in the second degree and grand theft regarding the Gullickson incident. After preliminary hearings, appellant was arraigned on separate informations to which he entered pleas of not guilty and not guilty by reason of mental illness. He moved for separate trials but upon motion of the State the court ordered the informations to be tried together. Appellant claims that the joinder of the charges found in the two informations prejudiced him because the evidence submitted at trial in one case would not have been admissible in the trial of the other case. According to the appellant, this would specifically prejudice him if he was to take the stand in regard to one charge but not for the other. Appellant, however, did not take the stand as to either charge.

SDCL 23A–11–1 provides for joinder of informations for trial, and reads as follows:

A court may order two or more indictments or informations, or both, to be tried together if the offenses, and the defendants, if there is more than one, could have been joined in a single indictment or information. The procedure shall be the same as if the prosecution were under a single indictment or information.

SDCL 23A–6–23 sets out, in the following manner, the standard for whether more than one information or indictment may be joined:

Two or more offenses may be charged in the same indictment or information in separate counts for each offense, if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

Under SDCL 23A–11–2, however:

If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires....

The aforementioned sections of our codified laws were taken from Federal Rules of Criminal Procedure 8(a), 13, and 14.

Under the predecessor of SDCL 23A–11–1 (SDCL 23–32–6), this court held that joinder of two unrelated burglaries committed two months apart was permissible. *State v. Van Beek*, 88 S.D. 154, 216

N.W.2d 561 (1974). Under that statute, joinder of the same class of crimes was permitted; however, SDCL 23–32–8, now superseded by SDCL 23A–11–2, provided that in the interests of justice and good cause shown in the discretion of the court, the court could order that different offenses be tried separately. In *Van Beek*, the court further said: "The denial of separate trials is not cause for reversal unless the court in so ruling abused its discretion. Wise judicial discretion should be exercised by the courts in this regard to protect the accused from prejudice." 88 S.D. at 157, 216 N.W.2d at 563. Under our present statute, SDCL 23A–11–2, (taken from Federal Rule 14) we held in *State v. Layton*, 337 N.W.2d 809, 815 (S.D.1983):

> Decisions to sever a trial are within the sound discretion of the trial court and its decision will not be disturbed on appeal, absent a showing of abuse of discretion. *State v. Reiman*, 284 N.W.2d 860 (S.D. 1979); *State v. Bonrud*, 246 N.W.2d 790 (S.D.1976).

In *Layton*, we further said the court should balance any prejudice against a policy which favors judicial efficiency.

The offenses charged here, namely, burglary and theft arising from the Johnson incident, and burglary and theft arising from the Gullickson incident, are of the same or similar character, and are closely related in time, place and manner of execution.

■ Appellant never identified which of the charges he desired to testify to, nor does he now. In addition, the court instructed the jury to consider each offense and the evidence applicable thereto separately. We hold that under the facts of this case the trial court did not abuse its discretion in joining the informations for trial. *See Dobbins v. State*, 483 P.2d 255 (Wyo.1971).

Appellant claims that the only evidence presented in the Gullickson incident was appellant's possession of the gems discovered one month after the burglary while he was being booked on other charges. Appellant maintains that the court should

have given an instruction regarding the possession of recently stolen property and the legal inferences to be drawn therefrom. Appellant proposed jury instructions # 13 and # 14, which were denied by the trial court. Proposed jury instruction # 13 reads as follows:

> In determining whether property possessed by a Defendant is "recently" stolen, the test under South Dakota law is whether the interval between the date of the alleged theft and the date of possession is so short as to render it morally or reasonably certain that there could have been no intermediate change of possession.
>
> It is the exclusive province of the jury to determine whether the facts and circumstances shown by the evidence in the case warrant any inference which the law permits the jury to draw from possession of recently-stolen property. If any possession the accused may have had of recently stolen property is consistent with innocence, the jury should acquit the accused.

Proposed jury instruction #14 reads as follows:

> The mere fact that a person was in conscious possession of recently stolen property is not enough to justify his conviction of theft. It is, however, a circumstance to be considered with other evidence. To warrant a finding of guilty, there must be proof of other circumstances tending of themselves to establish guilt.

Appellant not only claims it was error for the trial court to deny both instructions, but that the failure to give any instruction on possession of recently stolen property constituted reversible error. In *State v. Larkin*, 87 S.D. 61, 67, 202 N.W.2d 862, 865–6 (1972), we said:

> In the absence of such direct evidence, the state relied entirely upon the inference or presumption which is said to arise when the accused is found in possession of 'recently' stolen property. It has long been the rule in this state that possession of recently stolen property is,

*in itself*, a circumstance from which guilt may be presumed. *State v. Guffey*, 39 S.D. 84, 163 N.W. 679 (1917); *State v. Larson*, 41 S.D. 553, 172 N.W. 114 (1919); *State v. Johnson*, 49 S.D. 572, 207 N.W. 539 (1926). *The fact of such possession alone*, if unexplained by the facts and circumstances brought out at trial, is a sufficient circumstance upon which to rest a verdict of guilty, if it convinces the jury of the defendant's guilt beyond a reasonable doubt. *State v. Butler*, 71 S.D. 455, 25 N.W.2d 648 (1946); *State v. Rober*, [86] S.D. [442], 197 N.W.2d 707 (1972). Therefore, having produced sufficient evidence of possession by the appellants of the 'recently' stolen goods, the state established a prima facie case of larceny against them. (emphasis added)

Appellant claims that his proposed instructions #13 and #14 are patterned after our decision in *State v. Ellestad*, 88 S.D. 595, 225 N.W.2d 879 (1975). In *Ellestad*, however, the State's case was based solely on defendant's possession of a cow some fourteen months after the date of theft. There was no probative evidence, either direct or circumstantial, linking the defendant with the theft. There, the State proposed an instruction concerning the effect of the unexplained possession of stolen property, but omitted the requirement that the unexplained possession of the stolen property be recent. The court declined to give the instruction as proposed by the State. We held that the court was correct and further held defendant Ellestad's possession of the cow fourteen months after the theft would not be a circumstance sufficient upon which to base a conviction. We said in *Ellestad*, 88 S.D. at 599, 225 N.W.2d at 882 (citations omitted):

> Although the unexplained possession of recently stolen property is a sufficient circumstance upon which to base a conviction, see *State v. Larkin*, [87] S.D. [61], 202 N.W.2d 862 [1972], and cases cited therein, it is the element of recency that gives the circumstance of unexplained possession its probative value and justifies an inference of guilt on the

part of the possessor. The test of recency is whether the interval between the date of the alleged theft and the date of possession is so short as to render it morally or reasonably certain that there could have been no intermediate change of possession. In determining whether the possession of stolen goods can be characterized as recent, the circumstances and character of the goods, their saleability and whether they are readily and easily transferable are among the factors to be considered along with the length of time involved.

▮ In the cases at bar, there was more than the lone unexplained possession of recently stolen property. Shortly after the Johnson incident was reported, the officers followed tracks in the snow to appellant's residence. Upon his arrest, appellant was wearing boots with soles similar to these tracks. The boots and photographs of a footprint taken near the Johnson automobile were introduced in evidence so that the jury could compare the boots with the photograph of the footprint. One of the officers testified that the footprints were made by the boots which had a distinctive appearance. Further, shortly after the Gullickson incident was reported, the officers followed footsteps from the Gullickson home to the residence of the appellant. The evidence, however, did show that these footprints were different from those made by the boots he was wearing when arrested. Indeed, in both of these cases there was more than the element of the lone, unexplained possession of recently stolen property. Therefore, it was unnecessary for the trial court to instruct on recently stolen property, and the court properly refused appellant's instructions. Moreover, neither of appellant's proposed instructions properly stated the law as to unexplained possession of recently stolen property. Compare with our decisions in *Ellestad* and *Larkin*, *supra*. The court did give the usual instruction on circumstantial evidence.

In support of his mental illness defense, appellant called Dr. Daniel J. Kennelly, a psychiatrist, who testified as to his qualifi-

cations, examinations and diagnosis of appellant. He diagnosed appellant as suffering from schizophrenia. When asked what constituted schizophrenia, his answer was:

It is a disorder in which reality contact is at least impaired and can be manifested by such things as hallucinations or most commonly hearing voices, strange thoughts, persecutory ideas and suspiciousness, inability to formulate complete thoughts and like I said, the emotional inappropriateness living kind of life. Most people, anyway, if they are psychotic, they are fairly isolated from society.

Appellant's counsel asked Dr. Kennelly whether he could give an opinion as to whether the appellant knew right from wrong at the time of the alleged burglaries. He answered: "I cannot know that." On cross-examination by the deputy state's attorney, the following questions and answers were given:

Q (By Mr. Trotzig) On the two events in question here on January 28th, 1983 and December 25th of '82, Randy Closs, in your opinion, at least, did have the ability to know the difference between right and wrong, didn't he?

A The illness that he had would not necessarily have taken that away. I think that there might have been an impairment of his judgment of numerous things, including that, but to say it is taken away, no, I cannot say that it was taken away.

Q So you couldn't say whether it was taken away, but at least that ability to know the difference between right and wrong was still present?

A I guess I can say that, right. Again, I don't know if I can say that definitely, and since he did not give me the whole history and even if he did, that would still involve speculation on my part.

Q You just really can't say?

A All I can say is that the illness itself did not in itself take it away.

Q And the use of alcohol does not necessarily take it away either, does it?

A No.

Appellant claims that the court erred in failing to grant his motion of acquittal because the State failed to prove beyond a reasonable doubt that he was not suffering from a mental illness at the time he allegedly committed the offenses. He claims that specific intent is an essential element of burglary, grand theft, and petty theft, and that once the issue of mental capacity becomes an issue, the State must produce competent evidence to prove that the defendant was able to perform the specific intent to commit the alleged crimes. Appellant cites *State v. Standing Soldier*, 299 N.W.2d 568 (S.D.1980). We said in *State v. Kindvall*, 86 S.D. 91, 95, 191 N.W.2d 289, 292 (1971), that:

While the prosecution must prove beyond a reasonable doubt that the accused was mentally capable of the criminal intent required to constitute the crime charged, it is not necessary for the state in the first instance to prove the sanity of the accused. *State v. Waugh*, 80 S.D. 503, 127 N.W.2d 429 [1964]. *As held in that case sanity and criminal responsibility are rebuttably presumed. Evidence of the contrary is required to make an issue.* (emphasis added)

In *Kindvall*, a psychiatrist appointed by the court as an expert witness was unable to determine whether the defendant in that case knew right from wrong. The court said that in addition to the opinion evidence of experts and laymen, a defendant's mental condition may be proved by circumstantial evidence. In *Kindvall*, the defendant was diagnosed as a schizophrenic, paranoid type. The court upheld the conviction, pointing to the circumstantial evidence of mental illness and the failure of the psychiatrist to give an opinion of whether defendant Kindvall knew right from wrong. The court also gave credence to lay witnesses. In *Standing Soldier*, 299 N.W.2d at 572, we held:

Whenever evidence of the degree of insanity constituting a defense is present-

ed, the presumption of sanity disappears and the accused's mental capacity to commit the act for which he is charged becomes an essential element to be proved by competent evidence beyond a reasonable doubt.

At the time appellant allegedly committed the offenses, an accused's sanity was measured by his capacity and reason to enable him to distinguish between right and wrong with regard to the act charged. SDCL 22–3–1(3) and SDCL 22–1–2(22).

■ When the testimony of Dr. Kennelly is analyzed, it does not prove anything as to whether appellant knew right from wrong. If anything, it indicates on cross-examination that appellant's illness did not affect his ability to distinguish right from wrong at the time of the alleged incidents. Regardless, the jury had the right to determine this issue from all the evidence, including the manner in which the offenses were committed, taking into account the fact that only valuable items were taken from the Gullickson home, and that the bracket was hidden behind a couch along with other items. In our opinion, the court did not err when it denied the motion for acquittal.

During the cross-examination of Dr. Kennelly, the State questioned him about a report prepared by Dr. Ricci, a psychologist who had examined appellant at the request of Dr. Kennelly, to assist Dr. Kennelly in determining appellant's competency. The deputy state's attorney then asked this question: "What was Dr. Ricci's conclusion"? Dr. Kennelly then proceeded to read from Dr. Ricci's report. He read several paragraphs from the report, ending with the following:

He says, "There is no indication in subject's past records that he has even been blatantly psychotic. This is clear indication from interview data and an examination of past records that he has very strong anti-social features to his personality. Of particular concern are the presence in this individual's history of enuresis fire-setting, the ingestion—" (At which time the record was stopped and at the request of the Court Reporter, a recess was granted)

Thereupon, counsel and appellant went into the court's chambers where appellant made a motion for a mistrial. Appellant's counsel stated that the State had agreed in private not to mention any other criminal acts, particularly arson. Mr. Trotzig, the deputy state's attorney, apologized to the court, said he had never read the letter from Dr. Ricci, and that if he had read the letter, he would not have let Dr. Kennelly go as far as he did. Mr. Trotzig said that he did not expect Dr. Kennelly to keep reading on and on. Appellant's counsel said she was aware of the contents of this letter and for that reason did not induce any testimony on direct examination with regard to the letter. If defense counsel knew the contents of the report, she had plenty of time to intercede before Dr. Kennelly reached the offensive paragraph. Actually, the State asked for Dr. Ricci's conclusion, not a reading of the report. The court denied appellant's motion for a mistrial, making this comment among others: "I don't know if he was reading or referring to it, but I don't believe it was unduly prejudicial, particularly in view of the fact that the conclusions from the letter very strongly argue the defense's position."

■ "An actual showing of prejudice must exist to justify the granting of a mistrial." *State v. Clabaugh,* 346 N.W.2d 448, 451 (S.D.1984). Trial courts have considerable discretion in ruling upon a mistrial. The trial court did not abuse its discretion in denying the mistrial. *See State v. McDowell,* 349 N.W.2d 450 (S.D. 1984). As it correctly observed, the conclusions from the report were supportive of the defense.

We affirm.

FOSHEIM, C.J., concurs.

WOLLMAN, MORGAN and HENDERSON, JJ., concur in result.