**Modesto MENDICOA, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 88–223.

Supreme Court of Wyoming.

April 6, 1989.

Richard H. Honaker of Honaker & Hampton, Rock Springs, and Ronald J. Yengich of Yengich, Rich, Xaiz & Metos, Salt Lake City, Utah, for appellant.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., and Karen A. Byrne, Sr. Asst. Atty. Gen., for appellee.

Before THOMAS, URBIGKIT, MACY and GOLDEN, JJ., and GRANT, District Judge.

MACY, Justice.

Appellant Modesto Mendicoa appeals from his convictions on four felony counts of cattle rustling in contravention of Wyo. Stat. § 6–3–402(e) (1977) and four misdemeanor counts of transporting livestock across state lines without a brand inspection as proscribed by Wyo.Stat. §§ 11–20–203(a) and (b), 11–20–229, and 11–1–103 (1977).

We reverse.

Appellant presents the following issues for our review:

(I.) DID THE STATE FAIL TO PROVE BEYOND A REASONABLE

DOUBT THAT APPELLANT COMMIT-TED A LARCENY, AND THEREFORE LIVESTOCK RUSTLING, PURSUANT TO WYOMING STATUTES SECTION 6–3–402(a) AND (e), 1977 AS AMEND-ED?

(II.) DID THE STATE FAIL TO PROVE BEYOND A REASONABLE DOUBT THAT APPELLANT UNLAW-FULLY TRANSPORTED LIVESTOCK IN VIOLATION OF WYOMING STAT-UTES SECTION 11–20–203(a) AND (b), 11–20–103, 1977 AS AMENDED?

(III.) ASSUMING THAT THE AL-LEGED OFFENSES WERE COMMIT-TED, DID THE STATE FAIL TO PROVE BEYOND A REASONABLE DOUBT, OR BY ANY STANDARD, THAT APPELLANT COMMITTED SAID OFFENSES IN THE STATE OF WYOMING?

(IV.) DID THE TRIAL COURT COM-MIT REVERSIBLE ERROR WHEN IT GAVE INSTRUCTION NUMBER FIVE, WHICH DEALT WITH POSSESSION OF STOLEN PROPERTY?

(V.) WHEN THE TRIAL COURT MADE A PRELIMINARY RULING RE-GARDING THE STATE'S RIGHT TO IMPEACH APPELLANT ON CROSS EXAMINATION UNDER RULE 608(b) OF THE WYOMING RULES OF EVI-DENCE, DID IT ABUSE ITS DISCRE-TION BY NOT PROPERLY WEIGHING THE RISK OF PREJUDICE AGAINST THE PROBATIVE VALUE OF SUCH EVIDENCE?

(VI.) DID THE TRIAL COURT COM-MIT ERROR BY ALLOWING THE STATE TO ADMIT EVIDENCE OF A SUBSEQUENT "BAD ACT" PURSU-ANT TO WYOMING RULES OF EVI-DENCE SECTION 404(b)?

(VII.) DID THE TRIAL COURT COM-MIT ERROR BY REFUSING TO DIS-CHARGE A WITNESS WHO ADMIT-TED THAT HE AND OTHER WIT-NESSES HAD VIOLATED THE COURT'S RULE PROHIBITING DIS-CUSSION OF EVIDENCE BY WIT-NESSES?

(VIII.) WERE THE REMARKS OF THE PROSECUTOR IN CLOSING AR-GUMENT IMPROPER?

The sufficiency-of-the-evidence issues are dispositive for purposes of this appeal. Appellant's issues regarding the contested jury instruction (issue IV) and the jurisdiction of the trial court (issue III) are collateral to the sufficiency-of-the-evidence question and will be discussed in connection therewith. The other issues need not be addressed.

By initial complaint filed October 9, 1986, appellant was charged with sixteen counts of cattle rustling, sixteen counts of illegal transport of livestock, and one count of perjury. After a preliminary hearing, appellant was bound over to the district court on five counts each of rustling and illegal transport involving five cows allegedly stolen in Sweetwater County, Wyoming, and transported to the state of Utah. An information was filed on October 16, 1986. Charges regarding one of the cows were subsequently dismissed; i.e., one count of rustling and one count of illegal transport. After various pretrial proceedings, a five-and-one-half-day trial commenced on April 11, 1988, at the conclusion of which the jury returned a verdict of guilty on all counts charged. Appellant was sentenced to serve consecutive terms of not less than three years nor more than five years at the Wyoming State Penitentiary on the four rustling charges and a term of six months in the Sweetwater County jail for each of the four misdemeanor counts, with the county jail time to be served concurrently with the prison sentences. Appellant was also fined $10,000, assessed a $10,000 surcharge to the Crime Victims' Compensation Account, and ordered to pay restitution.

The evidence presented at trial disclosed the following facts and sequence of events. Birdie Jolley is a rancher in Sweetwater County, Wyoming. In 1982 or 1983 Ms. Jolley purchased one of the subject cows (the Jolley cow) from a North Dakota rancher. This particular cow was distinctly recognizable because of its short crooked horn and was used by Ms. Jolley as a "marker" cow in keeping track of her cattle. In the fall of 1984 Ms. Jolley discover-

ed that a number of her cattle, including the Jolley cow, were missing from her ranchlands. Although some of the missing cows were found or returned on their own by the following spring branding, several cows were not recovered, including the Jolley cow. Ms. Jolley reported the missing cattle to Larry Paine, Sweetwater County Undersheriff, in November of 1985. Neither Ms. Jolley nor anyone in her family had ever sold cattle to appellant.

Howard Routh is also a Sweetwater County rancher. In early January 1986 he discovered that ten to fifteen of his cattle were missing from his herd pastured near Rock Springs, Wyoming. Mr. Routh determined these cattle were missing by driving in his car around his herd of approximately 500 cattle. Mr. Routh never reported the missing cattle. Mr. Routh's brand and earmark were on three of the subject cows in this case (the Routh cows). Mr. Routh had never directly sold cattle to appellant, although appellant purchased seven of Routh's cows at an auction in Riverton, Wyoming, in 1984. Testimony at trial indicated that the subject Routh cows were too young to have been among the cows appellant purchased in 1984.

Appellant is a cattle broker and rancher with various ranch holdings in eastern Utah. Testimony at trial indicated that he bought and sold several thousand cattle per year during the time frame involved in this case. In February of 1986, H.E. Graham, a Texas rancher, negotiated a purchase of approximately 550 cows from appellant. Mr. Graham had leased pasture land in Utah for the cattle. In mid-February 1986 appellant delivered the cattle to Mr. Graham in several truck loads over a period of about ten days. Some of the deliveries were made after dark. Although under the terms of the sale agreement the cattle were to be blood tested and branded with Mr. Graham's brand prior to delivery, many of the cattle were delivered without that brand. The final total of cattle delivered to Mr. Graham was 487 cows and 117 calves. Appellant provided Mr. Graham with a proper brand inspection on the first delivery consisting of forty-seven cows and eight calves. The remaining cattle were delivered with simply a change-of-pasture permit or a transport-to-market permit, neither of which indicates a change of ownership or suffices as a proper brand inspection.

Boyd Pallesen, a brand inspector for the State of Utah, performed the change-of-pasture inspections of the cattle upon appellant's representation that he needed to move the cattle to another pasture. Appellant did not inform Mr. Pallesen that the cattle had been sold. Mr. Pallesen testified that for a change-of-pasture permit he conducts a less thorough inspection than that which is required for a change-of-ownership permit. On one of the inspections Mr. Pallesen noticed that some of the cattle had been freshly branded with a 2G brand, a brand with which he was not familiar. Upon inquiry, appellant attempted to persuade Mr. Pallesen that the 2G brand belonged to the BLM or to the State of Utah, to which Mr. Pallesen replied that neither of those entities owned brands. Appellant never would tell Mr. Pallesen whose brand it was, and Mr. Pallesen suspected something was amiss. Mr. Pallesen thereafter learned that the 2G brand belonged to Mr. Graham.

Eventually, on March 25, 1986, Mr. Pallesen and his supervisor conducted a brand inspection of the cattle Mr. Graham had purchased from appellant since the prior inspections were insufficient for a change-of-ownership permit. In the course of this inspection, they cut out four strays and impounded them for return to their rightful owners. Although he was not satisfied with the quality of the brand inspection conducted—many of the cattle were not inspected—Mr. Pallesen, at the express direction of his supervisor, wrote out a brand inspection for 456 of the 487 cattle purchased by Mr. Graham.

In early March 1986, Undersheriff Paine had informed Mr. Pallesen of the missing Jolley cattle and described their brand. On March 29, 1986, Mr. Pallesen contacted Undersheriff Paine and informed him that one of the missing cattle had turned up among the strays culled from the Graham herd in Utah. Undersheriff Paine and Ms. Jolley

subsequently identified the cow as the subject Jolley cow. Thereafter, in April 1986, various law enforcement personnel, including Undersheriff Paine and Mr. Pallesen, reinspected the Graham herd and discovered the three subject Routh cows.[1] Appellant was unable to produce any proof of ownership for the Jolley cow or the Routh cows. The suspect cattle were transported to Cheyenne, Wyoming, to be held as evidence.

In addition to that already mentioned, other evidence was produced at trial demonstrating appellant's attempts to evade a proper brand inspection and to conceal his lack of ownership of the subject cattle. This evidence included alteration of documents and an attempt to bribe a former brand inspector into issuing a phony brand inspection covering the Routh cattle. Additional evidence will be discussed as it pertains to specific aspects of the legal analysis.

Our standard of review to a sufficiency-of-the-evidence challenge in a criminal case is well settled. We examine all the evidence in the light most favorable to the State to determine if the verdict is supported by sufficient evidence. *Roose v. State*, 759 P.2d 478, 487 (Wyo.1988); *Jozen v. State*, 746 P.2d 1279, 1282 (Wyo.1987).

[I]t is not whether the evidence establishes guilt beyond a reasonable doubt for us, but rather whether it is sufficient to form the basis for a reasonable inference of guilt beyond a reasonable doubt to be drawn by the jury when the evidence is viewed in the light most favorable to the State.

\* \* \* \* \* \*

It is not our function to weigh the evidence for a determination as to whether or not it is sufficient to establish guilt beyond a reasonable doubt. We have consistently held that even though it is

possible to draw other inferences from the evidence presented, it is the responsibility of the jury to resolve conflicts in the evidence.

*Broom v. State*, 695 P.2d 640, 642 (Wyo. 1985) (citations omitted), quoted in *Roose*, 759 P.2d at 487.

We first look at the sufficiency of the evidence in relation to the cattle rustling charges. Livestock rustling is specifically proscribed in the Wyoming larceny statute, Wyo.Stat. § 6–3–402 (1977), which provides in material part:

(a) A person who steals, takes and carries, leads or drives away property of another with intent to deprive the owner or lawful possessor is guilty of larceny.

\* \* \* \* \* \*

(e) A person who steals any horse, mule, sheep, cattle, buffalo or swine is guilty of livestock rustling which is a felony punishable by imprisonment for not more than ten (10) years, a fine of not more than ten thousand dollars ($10,-000.00), or both.[2]

Livestock rustling is a specific type of larceny. In order to prove larceny, the State was required to establish the following elements: (1) that the crimes occurred in Sweetwater County within the time frame alleged; (2) that appellant stole or took and carried away; (3) with intent to steal; (4) the cattle which were the property of another. *See Wells v. State*, 613 P.2d 201, 202 (Wyo.1980); and *Repkie v. State*, 583 P.2d 1272, 1273 (Wyo.1978). In *Murdock v. State*, 351 P.2d 674 (Wyo.1960), the defendant was charged with stealing sheep. We stated in *Murdock* that, in order to support a conviction, "there must be a definite showing that defendant performed some act of taking, an asportation, or that he caused or procured [an accomplice] to perform such act; and that he must have done so with the intent to steal." *Id.* at

---

1. Charges regarding other Routh cows discovered in the course of the investigation were dismissed at the preliminary hearing because these cows were older and could have been among the Routh cows appellant purchased at the Riverton auction in 1984. As mentioned, the three subject Routh cows were determined to be too young to have been included in that purchase.

2. The statute specifically makes livestock rustling a felony, whereas larceny is otherwise a felony only if the value of the stolen property is $500 or more. *See* Wyo.Stat. § 6–3–402(c) (1977).

678. *See also* 3 C. Torcia, Wharton's Criminal Law § 369 (14th ed. 1980) (larceny requires a taking or caption and carrying away or asportation of the property of another).

In the instant case, there is considerable evidence that the cattle disappeared from their Wyoming owners' property within a reasonably ascertainable time frame; that they were found in Utah some months later when appellant sold them to Mr. Graham; and that appellant attempted to conceal his lack of ownership. The record is devoid, however, of any evidence linking appellant to the disappearance of these cattle from their owners' premises. This evidentiary failure is aptly demonstrated by excerpts from the cross-examination of key prosecution witnesses at trial. In the cross-examination of Undersheriff Paine regarding the Jolley cow, the following exchange occurred:

Q. You have absolutely no evidence whatsoever that Mr. Mendicoa was present or transported that cow from Aspen Mountain [Birdie Jolley's pasture land]; is that correct?

A. No, sir.

Q. That is not correct or you have no idea?

A. That is correct. I don't have any information.

Q. You have absolutely no evidence whatsoever that Mr. Mendicoa hired someone or instructed someone to take that cow from Aspen Mountain area, whoever took it?

A. I don't have that.

Similarly, in the cross-examination of Paul Breed, the Chief Enforcement Officer of the Wyoming Livestock Board, this exchange occurred with respect to both the Jolley cow and the Routh cows:

Q. And it's true, is it not, during the course of your investigation, you have not turned up any evidence, whatsoever, to indicate that Mr. Mendicoa or any of his agents transported the cattle from the Sand Creek area or from the Aspen Mountain area, Point of Rocks area down to his ranch; isn't that correct?

A. That's correct.

The State argues, nevertheless, that, although mere possession of recently stolen or lost property is insufficient to support a conviction of larceny, possession in conjunction with other incriminating circumstances such as misstatement and concealment will support such a conviction. *See Harley v. State,* 737 P.2d 750, 753 (Wyo. 1987); *McFetridge v. State,* 32 Wyo. 185, 231 P. 405 (1924); and 3 Wharton's Criminal Law, *supra,* § 361 at 321. We have no quarrel with this general principle. Under the circumstances of this case, however, and in reviewing the evidence in the light most favorable to the State, we must agree with appellant that the inference required for the jury to find that appellant or his agents actually stole or took and carried away these cattle exceeds the bounds of permissible inference.

The inference to be derived from possession of recently stolen property depends upon the key term "recently." We have emphasized that term in prior decisions. *See, e.g., Downs v. State,* 581 P.2d 610, 615 (Wyo.1978) (most condemning fact was possession of *recently* stolen property); *Orcutt v. State,* 366 P.2d 690, 692 (Wyo.1961) (possession of *recently* stolen property is evidence of guilt of larceny); *State v. Costin,* 46 Wyo. 463, 28 P.2d 782, 783 (1934) (*recent* possession of stolen property is material factor in larceny case); *Kinney v. State,* 36 Wyo. 466, 256 P. 1040 (1927) (possession must be *recent* in relation to the time of theft to be a material factor in determining guilt or innocence).

With respect to the recency requirement, appellant directs our attention to the case of *State v. Ellestad,* 88 S.D. 595, 225 N.W. 2d 879 (1975). In that case, the owner of certain cattle drove them to a barn on another farmstead for feeding and watering. On January 6, 1972, the barn where the cattle were being kept burned and, upon arrival at the scene, the owner discovered, in addition to dead cattle, that sixteen cows were missing. No trace of the missing cattle was found, although there was some evidence of entry and tampering with the barn. On March 8, 1973, the owner observed one of his missing cows at a

livestock auction. The cow had been consigned for sale by the defendant. Testimony at trial established that the defendant was a frequent buyer and seller of livestock. The owner and his son testified that, several times prior to the fire, they had observed the defendant driving past the farmstead where the fire occurred, but they acknowledged that the defendant's in-laws lived nearby. There were indications that the defendant might have doctored some of the documents relating to ownership. The defendant testified that either he must have purchased the cow or it must have somehow strayed onto his farm. In reversing the defendant's conviction for grand larceny, the South Dakota Supreme Court observed:

> There was no evidence linking defendant to the disappearance of the cow other than the fact of his possession some fourteen months after the date of the fire and disappearance of the sixteen cows.

*Id.* 225 N.W.2d at 881. In finding a lack of sufficient evidence, the *Ellestad* court also noted that the trial court had correctly refused to give the prosecution's requested instruction concerning the effect of the unexplained possession of recently stolen property. The court went on to say in that case:

> Although the unexplained possession of recently stolen property is a sufficient circumstance upon which to base a conviction, * * * it is the element of recency that gives the circumstance of unexplained possession its probative value and justifies an inference of guilt on the part of the possessor. The test of recency is whether the interval between the date of the alleged theft and the date of possession is so short as to render it morally or reasonably certain that there could have been no intermediate change of possession.

*Id.* at 882 (citations omitted). *See also State v. Smith,* 617 P.2d 232 (Okl.Cr.1980) (insufficient evidence of horse theft where defendant found in possession twenty-three days after alleged theft—to infer larceny from possession, the possession must closely follow the alleged theft); and Annota-tion, *What Constitutes "Recently" Stolen Property within Rule Inferring Guilt from Unexplained Possession of Such Property,* 89 A.L.R.3d 1202 at § 16 (1979) (collecting cases in which possession of stolen livestock within a few hours to one month after theft was held sufficient to support the inference and cases in which possession within sixteen days to four years after theft was held not sufficient to support the inference).

We find the reasoning in the *Ellestad* case persuasive and applicable to the instant case. Here, the Jolley cow was missing in the fall of 1984 and was discovered in March 1986 among the cattle appellant sold to Mr. Graham in February 1986. Mr. Routh discovered some of his cattle were missing by driving around his large herd in early January 1986. The Routh cows were discovered in the Graham herd in April 1986, although evidence was presented indicating the Routh cows were on appellant's Utah ranch in February 1986. To a greater extent than in *Ellestad,* the evidence in the instant case established that appellant was actively involved in large scale buying and selling of cattle. Here, as opposed to *Ellestad,* there was no evidence placing appellant, or anyone connected with him, in the vicinity of the cattle disappearances. The lapse in time between the disappearances of the cattle in this case and their discovery in the Graham herd ranges from a minimum of over one month to one and one-half years. There is no evidence linking appellant to the disappearances of the cattle from the Wyoming ranches, and the time period between the alleged thefts and appellant's later possession of the cattle was not so short as to render it reasonably certain that there could have not been an intermediate change of possession. *See Ellestad,* 225 N.W.2d at 882.

■ The jury was instructed, over appellant's objection, regarding the permissible inference of theft from the unexplained possession of recently stolen property. The instruction should not have been given. The predicate fact of recency upon which the inference depends was not established by the evidence. *See Harley,* 737 P.2d at

755. The inference was impermissible under the facts of this case, and, without the inference, there was no evidence of stealing or a taking and carrying away. Accordingly, the cattle rustling convictions must fall.[3]

 The foregoing analysis with respect to appellant's larceny convictions applies equally to appellant's misdemeanor convictions pursuant to Wyo.Stat. § 11–20–203 (1977).[4] That statute provides:

(a) Except as hereafter provided, it is unlawful for any person, firm, partnership, corporation, or association to sell and deliver, or to remove or cause to be removed in any way from any county in Wyoming to any other county, state or country, any livestock unless each animal has been inspected for brands and ownership at the time of delivery or removal by an authorized Wyoming brand inspector and a proper certificate of inspection or clearance has been issued.

(b) Transporting livestock across state lines without first having had such inspection and having obtained such certificates is prima facie evidence of intent to avoid inspection and to steal, take and carry away the animals and is punishable as provided in W.S. 6–7–301 [now § 6–3–402].

We agree with appellant that there is no evidence that he possessed the subject cows in Wyoming or that he transported them across state lines. Appellant's convictions under this statute cannot be sustained.

 As a final matter we briefly comment on appellant's contention that, because there was no evidence that appellant committed the alleged crimes in Wyoming, the State of Wyoming had no jurisdiction over the charged offenses. If appellant's assertion were correct, it would be dispositive of this case and that would be the end of the matter. Appellant, however, misapprehends the nature of the problem. The State of Wyoming has jurisdiction over criminal conduct occurring in Wyoming. *Rios v. State*, 733 P.2d 242, 245 (Wyo.), *cert. denied*, —— U.S. ——, 108 S.Ct. 108, 98 L.Ed.2d 68 (1987); *Hopkinson v. State*, 632 P.2d 79, 100 (Wyo.1981), *cert. denied*, 455 U.S. 922, 102 S.Ct. 1280, 71 L.Ed.2d 463 (1982). Subject matter jurisdiction over the offense charged is fundamental and indispensable to a prosecution. *Rios*, 733 P.2d at 244. Under the circumstances of the instant case, if the offenses charged occurred, they occurred in Wyoming.[5] *See Rios*, 733 P.2d at 243. Wyoming had subject matter jurisdiction with respect to these alleged crimes. The State simply failed to prove its case against appellant.

Reversed.

---

3. We note that the evidence presented in this case possibly would have been sufficient to establish the guilty knowledge required for a conviction of receiving stolen property pursuant to a statute such as Wyo.Stat. § 6–3–403 (1977). *See, e.g., Smith*, 617 P.2d at 234 (recency not established for larceny charge but strong possibility that evidence would have been sufficient for charge of receiving stolen property). *See also Harley*, 737 P.2d 750, and *Tageant v. State*, 673 P.2d 651 (Wyo.1983) (cases affirming convictions for receiving stolen property premised on inference from possession). Consistent with the evidence presented in this case, however, such a charge could only have been prosecuted in Utah under the laws of that state.

4. Wyo.Stat. §§ 11–20–229 and 11–1–103 (1977) are the applicable penalty provisions.

5. This case is not in the posture of *Hopkinson*, 632 P.2d 79, in which it was unsuccessfully argued that the accessorial acts underlying the charge of accessory before the fact occurred outside of Wyoming, thereby depriving Wyoming of jurisdiction.